1   DANIEL JOHNSON, JR. (SBN 57409)
    BRETT M. SCHUMAN (SBN 189247)
2   AHREN C. HOFFMAN (SBN 250469)
    RYAN L. SCHER (SBN 244706)
3   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
4   San Francisco, California 94105-1126
    Telephone:   415.442.1000
5   Facsimile:   415.442.1001
    E-mail:   djjohnson@morganlewis.com
6   E-mail:   bschuman@morganlewis.com
    E-mail:   ahoffman@morganlewis.com
7   E-mail:   rscher@morganlewis.com

8   Attorneys for Plaintiff and Counterdefendant,
    OPENWAVE SYSTEMS, INC. and Plaintiff
9   OPENWAVE SYSTEMS (ROI) LTD.

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                   SAN JOSE DIVISION

14

15  OPENWAVE SYSTEMS, INC.,          Case No. 09-CV-03511 (RS, HRL)
    a Delaware corporation, and
16  OPENWAVE SYSTEMS (ROI) LTD., its  **[REDACTED] NOTICE OF MOTION AND
    Republic of Ireland subsidiary,   MOTION TO DISQUALIFY
17                                     DEFENDANTS' COUNSEL**

18              Plaintiffs,            Date:       March 25, 2010
                                       Time:       1:30 p.m.
19          v.                         Location:   SF Courtroom 3, 17th Floor
                                       Judge:      The Hon. Richard Seeborg
20  724 SOLUTIONS (US) INC., a Delaware
    corporation, and 724 SOLUTIONS
21  SOFTWARE INC., a Delaware
    corporation,
22
                Defendants.
23
    AND RELATED COUNTERCLAIMS
24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE THAT on March 25, 2010 at 1:30 pm, in Courtroom 3, 17th

3   floor, before the Honorable Richard Seeborg, located at 450 Golden Gate Ave., San Francisco,

4   California, 94102, or as soon thereafter as counsel may be heard, Plaintiff and Counterdefendant

5   Openwave Systems, Inc. ("Openwave") will and hereby does move the Court for an order to

6   disqualify Fish & Richardson P.C. from appearing in this matter on behalf of 724 Solutions (US)

7   Inc. and 724 Solutions Software Inc. (together, "724 Solutions").

8   This motion is based on this Notice of Motion and Motion, the Memorandum of Points

9   and Authorities attached hereto, the declarations of Brett M. Schuman and Alan Minsk filed

10   herewith, the Court's files and records in this case, and upon such other matters as may be

11   presented to the Court before or at the time of the hearing.

12   Dated: February 18, 2010                    MORGAN, LEWIS & BOCKIUS LLP

13

14

15                                              By  /s/ Brett M. Schuman
                                                    Brett M. Schuman
16                                                  Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1                    1          NOTICE OF MOTION AND MOTION TO
                                             DISQUALIFY DEFENDANTS' COUNSEL
                                             CASE NO. 09-CV-03511 (RS, HRL)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................1

II. APPLICABLE LAW: THE "SUBSTANTIAL RELATIONSHIP" TEST ........................2

III. RELEVANT FACTUAL BACKGROUND.............................................................3

    A. The Technology and Patents At Issue In This Case ................................3

    B. Fish's Seven Year Representation of Openwave In IP Matters...............6

        1. Many Of The Fish Attorneys Who Worked On These Matters Are Still Employed By Fish................................................................7

        2. Fish's Work On Oppositions Involving Technology That Is Substantially Related To The Technology At Issue In The Current Case.........................................................................................8

            a. The Motorola Application ..............................................8

            b. The Infogear Application.............................................11

        3. Fish's Work On Patent Applications And Prosecutions Involving Substantially Related Technology To That At Issue In The Current Case.......................................................................................12

            a. The "Voicemail Agent Patent"/ '990 Patent Matter .....13

            b. The "PIM Sync" Matter...............................................13

        4. Over The Course Of Its Lengthy Representation Of Openwave, ███████████████████████████████████████████...16

    C. Fish Appears In This Litigation And Refuses To Withdraw. ...............16

IV. FISH MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE OF ITS PRIOR REPRESENTATION OF OPENWAVE IN SUBSTANTIALLY RELATED MATTERS.....................................................................................16

    A. Fish's Prior Representation Of Openwave Is Substantially Related To The Pending Case Where Fish Is Attempting To Represent A Party Adverse To Openwave. ......................................................................................16

    B. Because Fish Attorneys Who Worked On Openwave Matters Must Be Disqualified, The Whole Fish Firm Must Be Disqualified....................19

V. CONCLUSION.............................................................................................19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

i

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brand v. 20th Century Ins. Co.,*
   124 Cal. App. 4th 594 (2004) ..................................................................................................3

*City & Cty. of San Francisco v. Cobra Solutions, Inc.,*
   38 Cal. 4th 839 (2006) ..........................................................................................................3

*City Nat'l Bank v. Adams,*
   96 Cal. App. 4th 315 (2002) ..................................................................................................3

*Elan Transdermal Ltd. v. Cygnus Therpeutic Sys.,*
   809 F. Supp. 1383 (N.D. Cal. 1992) ...............................................................................3, 18

*Farris v. Fireman's Fund Ins. Co.,*
   119 Cal. App. 4th 671 (2004) ..............................................................................................18

*Flatt v. Super. Ct.,*
   9 Cal. 4th 275 (1994) ............................................................................................................2

*Hitachi, Ltd. v. Tatung Co.,*
   419 F. Supp. 2d 1158 (N.D. Cal. 2006) ...........................................................................2, 19

*Jessen v. Hartford Cas. Ins. Co.,*
   111 Cal. App. 4th 698 (2003) ................................................................................................3

*Med-Trans Corp., Inc. v. City of Calif. City,*
   156 Cal. App. 4th 655 (2007) ...........................................................................................3, 19

*Trone v. Smith,*
   621 F.2d 994 (9th Cir. 1980) ................................................................................................3

**Rules**

Cal. R. Prof. Conduct 3-310(e) ...................................................................................................2

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

## I.    **INTRODUCTION**

Plaintiff Openwave Systems, Inc. ("Openwave") sued defendants 724 Solutions (US) Inc. and 724 Solutions Software Inc. (together, "724 Solutions") alleging infringement of eight of Openwave's patents.  Generally, the patents-in-suit claim inventions concerning some of Openwave's most fundamental early technologies in the area of enabling mobile internet access and related services.

From the time this case was filed, on July 31, 2009, through January 2010, 724 Solutions was represented by the Sprinkle IP Law Group, P.C.  On January 19, 2010, Fish & Richardson P.C. ("Fish") first formally appeared on behalf of 724 Solutions.

Fish is conflicted and must be disqualified from representing 724 Solutions adversely to Openwave in this case.  From 2000 to 2007, Fish represented Openwave in patent prosecution and other IP-related matters.  Fish billed Openwave over $300,000 for this work.  Among other things, Fish represented Openwave in connection with oppositions to third-party patent applications that purported to claim rights to technology that indisputably is substantially related to the technology claimed in the Openwave patents-in-suit.  Indeed, Fish **represented** Openwave in connection with analysis and litigation of a patent that formed the basis for an obviousness-based rejection during prosecution of one of the patents-in-suit, and that undoubtedly will be wielded **against** Openwave in this case by Fish's current client, 724 Solutions.  During the course of this seven-year representation, Fish attorneys discussed ███████████████ ████ with Openwave's in-house Patent Counsel and Chief Technology Officer ("CTO"), both of whom are witnesses in this case.  As explained by Openwave's former Patent Counsel, Openwave's relationship with Fish ran so deep that:



MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

1

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

1  Decl. of Alan D. Minsk ("Minsk Decl.") ¶ 13.

2       Shortly after Fish first appeared on behalf of 724 Solutions, Openwave asked Fish to

3  withdraw from this case. Fish refused, requiring the filing of this motion. The Court now should

4  disqualify Fish, thereby rejecting Fish's perfidy and protecting Openwave's rights as a former

5  Fish client. Openwave would be severely prejudiced by having to litigate this case against its

6  own former IP counsel. 724 Solutions, on the other hand, would hardly be prejudiced at all by

7  disqualification: Fish has only been involved in this case for a month, and both Fish and 724

8  Solutions were on notice of Openwave's objection to Fish's participation in this case within two

9  weeks of Fish's initial appearance.

## II.  APPLICABLE LAW: THE "SUBSTANTIAL RELATIONSHIP" TEST

11      In this Court, motions to disqualify counsel are decided under state law. *Hitachi, Ltd. v.*

12  *Tatung Co.*, 419 F. Supp. 2d 1158, 1160 (N.D. Cal. 2006). California Rule of Professional

13  Conduct 3-310(E) provides as follows:

> A member shall not, without the informed written consent of the
> client or former client, accept employment adverse to the client or
> former client where, by reason of the representation of the client or
> former client, the member has obtained confidential information
> material to the employment.

Cal. R. Prof. Conduct 3-310(e). To demonstrate a disqualifying conflict of interest under this

rule, a client need not establish that its former counsel actually obtained or presently possesses

confidential information material to the present case. Instead, California law applies the

"substantial relationship" test to determine whether confidential information has been imparted in

the course of a prior representation. A "substantial relationship" exists whenever the subject

matters of the prior representation and current matter are linked in some rational manner. *See*

*Flatt v. Super. Ct.*, 9 Cal. 4th 275, 283 (1994). Successive representations are "substantially

related" where the facts support a "rational conclusion that information material to the evaluation,

prosecution, settlement or accomplishment of the former representation given its factual and legal

issues is also material to the evaluation, prosecution, settlement or accomplishment of the current

representation given its factual and legal issues." *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

2

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

4th 698, 713 (2003) (internal citations omitted); *see also Trone v. Smith*, 621 F.2d 994, 999 (9th Cir. 1980) ("Substantiality is present if the factual context of the two representations are similar or related.").

"When a substantial relationship between two representations is established, the attorney is automatically disqualified from representing the second client." *City & Cty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 847 (2006). In other words, the presumption that the former counsel obtained confidential information material to the current case is **conclusive** if a substantial relationship between the prior representation and current case is established. *See, e.g., Elan Transdermal Ltd. v. Cygnus Therpeutic Sys.*, 809 F. Supp. 1383, 1392 (N.D. Cal. 1992); *City Nat'l Bank v. Adams*, 96 Cal. App. 4th 315, 327 (2002). Further, if a substantial relationship is established, the length of time since the former representation is irrelevant. *See, e.g., Brand v. 20th Century Ins. Co.*, 124 Cal. App. 4th 594, 607 (2004).

Finally, it is well-established that the mandatory disqualification that results from a finding of a substantial relationship extends vicariously to the entire firm. *See Med-Trans Corp., Inc. v. City of Calif. City*, 156 Cal. App. 4th 655, 665 (2007).

## III.   RELEVANT FACTUAL BACKGROUND

### A.   The Technology and Patents At Issue In This Case

Openwave is a Redwood City-based pioneer of, among other things, software products that enable mobile network operators, *e.g.*, AT&T, to offer mobile internet access and other mobile value-added services. Openwave filed its Complaint against 724 Solutions on July 31, 2009, alleging that 724 Solutions' products infringe, either directly or indirectly, one or more claims of four of Openwave's patents: U.S. Patent Nos. 7,054,626 (the "'626 Patent"); 6,430,409 (the "'409 Patent"); 6,466,783 (the "'783 Patent"); and 6,742,022 (the "'022 Patent"). Dkt. No. 1 (Complaint); *see* Decl. of Brett M. Schuman in Supp. of Mot. to Disqualify ("Schuman Decl.") ¶¶ 2-5, Exs. A ('626 Patent), B ('409 Patent), C ('783 Patent), D ('022 Patent). Openwave recently filed a First Amended Complaint alleging infringement of four additional patents: U.S. Patent Nos. 6,065,120 (the "'120 Patent"); 6,119,167 (the "'167 Patent"); 6,247,048 (the "'048 Patent"); and 6,822,954 (the "'954 Patent"). Dkt. No. 78 (First Amended Complaint); *see* Schuman Decl.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

3

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

¶¶ 6-9, Exs. E ('120 Patent), F ('167 Patent), G ('048 Patent), H ('954 Patent).  Generally

speaking, the patents-in-suit cover systems, methods, and apparatuses enabling mobile phone

users to access information and services available over the Internet:

| Patent(s)-In-Suit | Title | Subject Matter |
|---|---|---|
| The '626 & '409 Patents | Method And Architecture For An Interactive Two-Way Data Communication Network | "This invention relates generally to data communications and in particular to two-way data communication devices including a cellular telephone, a two-way pager, and a telephone that permit a user to interface with and interact with a server on a computer network." '626 Patent at 1:34-38; '409 Patent at 1:30-34. |
| The '783 Patent | Visual Interface To Mobile Subscriber Services | "The present invention relates to user interfaces and, more particularly, to visual interfaces to mobile subscriber account services, including billing and customer service requests . . . ." '783 Patent at 1:14-17. |
| The '022 Patent | Centralized Service Management System For Two-Way Interactive Communication Devices In Data Networks | The invention relates to "a method and apparatus for managing two-way interactive communication devices over the data networks utilizing a link server; wherein the two-way interactive communication devices, such as mobile devices . . . have generally limited computing resources . . . ." '022 Patent at 1:15-21. |
| The '954 Patent | Telecommunications Gateway | "The invention relates to a gateway for telecommunication networks, and particularly for networks providing Wireless Application Protocol (WAP) capability." '954 Patent at 1:10-12. "The gateway allows WAP capable handsets (i.e. those equipped with a browser and a WAP stack) to access applications hosted on standard HTTP servers . . . ." *Id.* at 4:13-15. |
| The '048 Patent | Method And Apparatus For Transcoding Character Sets Between Internet Hosts And Thin Client Devices Over Data Networks | "The present invention . . . has particular application to navigation of Internet web pages using a two-way interactive communication device, such as a mobile device [or] mobile phone . . . ." '048 Patent at 2:3-7. |
| The '167 Patent | Pushing And Pulling Data | "The present invention relates to networks, and |

| Patent(s)-In-Suit | Title | Subject Matter |
|---|---|---|
| | In Networks | more particularly to pushing and pulling data over networks. A network client receives data from a server by means of a push or a pull." '167 Patent at 1:29-32. "In some embodiments, clients are handheld devices, for example, cellular telephones." *Id.* at 3:28-29. |
| The '120 Patent | Method And System For Self-Provisioning A Rendezvous To Ensure Secure Access To Information In A Database From Multiple Devices | The invention "relates to a method and system for self-provisioning, through a first device [*e.g.*, mobile phone], a rendezvous [*e.g.*, web portal] to ensure secure access to managed information in a user account by other devices [*e.g.*, PC]." '120 Patent at 1:26-31. "One of the important aspects of the present invention is to provide a generic solution for communicating desired ideas or transactions from other devices with rich user interface[s] to such a thin client [*e.g.*, mobile phone] through a self-provisioned account entry." *Id.* at 2:53-57. |

*See* Schuman Decl. ¶¶ 2-9, Exs. A-H (patents-in-suit).

Defendant 724 Solutions sells software products to mobile network operators. Openwave alleges that a number of 724 Solutions' software products – all products sold to mobile network operators, and all products that enable those operators to offer internet or other value-added services to their mobile subscribers – infringe Openwave's patents-in-suit. For example, Openwave has accused 724 Solutions' X-treme Mobility Gateway ("XMG") product of infringing all of the patents-in-suit. The XMG is a "gateway" between a mobile device and content on the Internet and performs services such as content conversion, access control, and acts as a push proxy:

//

//

//

//

//

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

5

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)



Schuman Decl. ¶ 10, Ex. I (XMG Brochure) 3.

## B.   Fish's Seven Year Representation of Openwave In IP Matters

Fish started representing Openwave after the company (then still known as Phone.com) acquired a company called AtMotion in late 1999.[1]  Minsk Decl. ¶ 7.  Fish provided legal services, including IP legal services such as patent prosecution, to AtMotion prior to the acquisition.  *Id.*  Between 2000 until at least 2007, Fish:

- prosecuted at least ten patent prosecution matters for Openwave;

- represented Openwave in connection with oppositions to patents applications filed by others relating to Openwave's inventions, technologies and products; and

- was one of Openwave's ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

*See* Minsk Decl. ¶¶ 7-13.  Fish billed Openwave over $300,000 for these legal services.  Minsk Decl. ¶ 13.

---

[1] AtMotion developed voice portal technology that could voice-enable mobile phones to access content and other services over the Internet.  *See* Schuman Decl. ¶ 11, Ex. J (Phone.com 10-Q Dec 1999).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

6

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

1.   **Many Of The Fish Attorneys Who Worked On These Matters Are Still Employed By Fish.**

Of the Fish attorneys who worked on Openwave matters between 2000 and 2007, at least eight are currently Fish principals/of counsel.  Five of these eight attorneys – including Hans Troesch, who performed substantial work on just about every Openwave matter – are resident in Fish's relatively small Silicon Valley office.[2] 724 Solutions' current counsel of record, David Barkan, also is resident in Fish's Silicon Valley office.  Schuman Decl. ¶ 17, Ex. P.  The following chart identifies all known current Fish attorneys who worked on Openwave matters:

| Current Fish Principal/Of Counsel | Fish Office | Openwave Matters Worked On |
|---|---|---|
| Hans Troesch | Silicon Valley | - Motorola and Infogear oppositions<br>- Prosecution of the '990, '676, '345, '079, '190, and '595 Patents<br>- "PIM sync over the phone," "Audio click through advertising," and "Multinode resource manager" matters |
| Katherine K. Lutton | Silicon Valley | - Prosecution of the '990, '676, '345, '327, '079, '190, and '595 Patents<br>- "PIM sync over the phone," "Audio click through advertising," and "Multinode resource manager" matters |
| Mark D. Kirkland | Silicon Valley | - Prosecution of the '079 and '345 Patents |
| David J. Goren | Silicon Valley | - Prosecution of the '595 Patent<br>- "PIM sync over the phone" matter |
| Roger S. Borovoy | Silicon Valley | - Prosecution of the '990 Patent |
| Timothy A. French | Boston | - Prosecution of the '190 Patent |
| David L. Feigenbaum | Boston | - Prosecution of U.S. Patent App. No. 11/582,145 |

[2] According to Fish's website directory, only 43 attorneys reside in its Silicon Valley office.  *See* Schuman Decl. ¶ 17, Ex. P (Fish Silicon Valley Office Attorney List).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1                    7

NOTICE OF MOTION AND MOTION TO DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

| Current Fish Principal/Of Counsel | Fish Office | Openwave Matters Worked On |
|---|---|---|
| John F. Hayden | Washington, D.C. | - Prosecution of U.S. Patent App. No. 11/582,145 |

2.    **Fish's Work On Oppositions Involving Technology That Is Substantially Related To The Technology At Issue In The Current Case.**

a.    **The Motorola Application**

In early 2000, Openwave learned that Motorola had filed a patent application in Australia entitled "Proxy host computer and method for accessing and retrieving information between a browser and a proxy."  Minsk Decl. ¶ 9, Ex. I (Australia Patent App. No. 199858010 B2, the "Motorola Application").  Generally speaking, this application purported to claim the use of a proxy to facilitate and enhance communication between a terminal, *e.g.*, a portable computer or mobile phone, and a network.  Minsk Decl. ¶ 9, Ex. I (Motorola Application) 1:5-24.



Minsk Decl. ¶ 9.

Minsk Decl. ¶ 9.

Minsk Decl. ¶ 9.

By way of illustration, claim 1 of the Motorola Application parallels claim 1 of the '626 patent-in-suit in a number of respects—*i.e.*, they both involve receiving a request from a mobile or other device for information on a network (*e.g.*, Internet), obtaining the requested information,

DB2/21559764.1

8

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

and forwarding the information to the device:

| Motorola Application – Claim 12 | Openwave's '626 Patent – Claim 1 |
|---|---|
| A method of accessing and retrieving information in a networked data communications system comprising, at a proxy: | A method comprising: |
| receiving, at a specific attachment point, from a browser a query directed to an information source, the query directed to the specific attachment point of a plurality of attachment points of the proxy; | receiving a request over a wireless network at a network node, wherein the request originates from a mobile device on the wireless network and is for a resource on a wireline network, and wherein the network node is coupled to the wireless network and the wireline network; |
| establishing a set of services associated with the browser, said set of services depending on the specific attachment point; | obtaining the resource over the wireline network using the network node; |
| forwarding the query to the information source; | processing the resource in the network node to make the resource more compatible with the mobile device or the wireless network or both; and |
| receiving from the information source a response to the query; | sending the processed resource from the network node to the mobile device over the wireless network as a response to the request, |
| selecting a method of filtering to apply to the response as a function of the set of services associated with the browser; | the response to the request comprising a card deck that comprises one or more cards. |
| modifying by filtering the response according to the method of filtering to provide a modified response; and | |
| forwarding the modified response to the browser. | |

*See* Minsk Decl. ¶ 9, Ex I (Motorola Application) Claim Sheet at 4; Schuman Decl. ¶ 2, Ex. A ('626 Patent) 59:22-38.

Indeed, the Motorola Application and the patents-in-suit are so similar that:

- The Motorola Application's United States counterpart, which issued as U.S. Patent No. 6,049,821 (the "Motorola '821 Patent," attached to the Schuman Declaration as Exhibit S) and shares the same specification as the Australian application, is identified by the U.S.P.T.O. using the **same subject matter classification** (U.S. Classification 709/203[3]) as the '626, '409, '167, and '048 patents-in-suit;

---

[3] U.S. Classification 709/203 is defined as "[s]ubject matter wherein at least one local computer provides a user interface and performs local data processing to interact with at least one remote computer which implements data processing (e.g., data management, data sharing) within a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

9

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

- The Motorola '821 Patent is a **cited reference** for the '626, '022, and '783 patent-in-suit;

- The Motorola '821 Patent formed the basis for an **obviousness rejection** of claims submitted during the prosecution of the application that resulted in the '022 Patent. *See* Schuman Decl. ¶ 19, Ex. R (excerpts from '022 Patent's prosecution history showing rejection based on Motorola '821 Patent). In response to the rejection, Openwave distinguished the teachings of the Motorola '821 Patent from the subject matter claimed in the '022 Patent. *Id.*; and

- The Motorola '821 Patent shares at least one commonly cited reference (U.S. Patent No. 5,727,159) with **seven of the eight patents-in-suit**.



Minsk Decl. ¶ 9.

Minsk Decl. ¶ 11, Ex. K (Fish billing statements).

*See id.*

*Id.*

generic time-sharing environment in response to the local computer to transfer data between the local computer and the remote computer." Classification Definitions (January 2009), http://www.uspto.gov/web/patents/classification/uspc709/defs709.pdf.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

10

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

[REDACTED]

*See* Minsk Decl. ¶ 11.

### b. The Infogear Application

Subsequent to Fish's representation of Openwave in connection with the opposition to the Motorola Application, Openwave learned that Infogear Technology had filed an application in Australia entitled "Method and system for network access over low bandwith link." Minsk Decl. ¶ 12, Ex. L (Australia Patent App. No. 199895705 B2, the "Infogear Application"). Generally speaking, the Infogear Application purported to claim a method and system for facilitating access by devices, such a mobile telephones, to information available on a network, including by using a gateway. Minsk Decl. ¶ 12. [REDACTED]

[REDACTED] *Id.*

As with the Motorola Application, the Infogear Application also relates to Openwave's own inventions, technologies, patents and pending patent applications. For example, the gateway depicted in the Infogear Application is in many respects similar to the one claimed in Openwave's '409 Patent:

| Infogear Application (Figure 5) | The '409 Patent (Figure 5) |
|---|---|
|  | |

FIG. 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

11

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

1   Minsk Decl. ¶ 12, Ex. L (Infogear Application); Schuman Decl. ¶ 3, Ex. B ('409 Patent).

2          As with Openwave's '409 Patent, the system disclosed by the Infogear Application is

3   specifically designed to facilitate data communication with mobile phones.  *See* Minsk Decl. ¶ 12,

4   Ex. L (Infogear Application) 6 ("The invention is also readily adapted for use with Internet access

5   devices that require different document formats and have different display capabilities, such as an

6   Internet-compatible telephone, computer, a cellular phone, or a personal digital assistant having a

7   wireless phone.").

8          Openwave retained Fish to oppose the Infogear Application for the same reasons that it

9   retained Fish to oppose the Motorola Application.  Minsk Decl. ¶ 12.

10  

11  

12  

13  Minsk Decl. ¶ 12, Exs. L (July 16, 2001 Letter from Troesch copying Minsk) M (Fish billing

14  statements).  In addition, although not reflected in the billing statements, Mr. Minsk likely had

15  one or more attorney-client privileged conversations with Mr. Troesch about this matter.  Minsk

16  Decl. ¶ 12.

17          3.    **Fish's Work On Patent Applications And Prosecutions Involving**
               **Substantially Related Technology To That At Issue In The Current**
18             **Case.**

19          Between 2000 and 2007, at the earliest, Fish handled at least ten patent prosecution

20  matters for Openwave.[4]  Minsk Decl. ¶ 7.  Work on these matters by Fish attorneys resulted in the

21  issuance of at least six patents between 2001 and 2004: U.S. Patent Nos. 6,230,190; 6,243,676;

22  6,397,345; 6,412,079; 6,711,595; and 6,718,327.  *Id.*, Exs. A-F.  In addition, Fish represented

23  Openwave in connection with the prosecution of U.S. Patent No. 7,286,990 (the "'990 Patent"),

24  which issued in October 2007.  *Id.* ¶ 8.  Fish also represented Openwave in connection with U.S.

25  Patent App. No. 11/582,145, entitled "Data Network Computing Device Call Processing;" this

26  _____
    [4] On Fish's billing records, these 10 matters were referred to as (1) "PIM sync over the phone";
27  (2) "Voicemail agent"; (3) "Cluster system share file storage architecture"; (4) "Alchemy patent";
    (5) "Audio click through advertising"; (6) "Fault tolerant bus for clustered system"; (7) "Timed
    delivery message system"; (8) "Cluster system server pool architecture"; (9) "Multinode resource
28  manager"; and (10) "Method load shared memory segment."  *See* Minsk Decl. Ex. N.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1                                    12                    NOTICE OF MOTION AND MOTION TO
                                                                       DISQUALIFY DEFENDANTS' COUNSEL
                                                                       CASE NO. 09-CV-03511 (RS, HRL)

application was filed on October 17, 2006, and Fish lawyers handled the matter until at least February 2007. *Id.* ¶ 8, Ex. H.

### a.   The "Voicemail Agent Patent"/ '990 Patent Matter

Fish represented Openwave in connection with the "Voicemail agent patent" matter, which resulted in the issuance of the '990 Patent. *See* Minsk Decl. ¶ 8, Ex. G (U.S. Patent App. No. 11/582,145); Schuman Decl. ¶ 12, Ex. K ('990 Patent).  Among other things, this patent teaches an interface that allows a user to browse the Internet using his or her mobile phone:

> The invention provides a seamless access to one or more information systems. More particularly, the invention provides access to multiple communication systems, some of which are text-driven, using a wireless telephone. The Universal Interface ("UI") of the invention recognizes voice commands, converts the commands into commands recognizable by the information systems, and utilizes the converted commands to access information systems and retrieve data therefrom. The UI enables an individual to retrieve all of his or her information using a single device such as a wireless telephone. For instance, the individual can retrieve various information from a wireless telephone including voicemail messages, personal information manager information, to do lists, electronic mail messages, and information stored on the Internet.

Schuman Decl. ¶ 12, Ex. K ('990 Patent) 7:3-18.  Among others, current Fish principals Hans Troesch and Katherine Lutton worked on this matter for Openwave.  *See* Minsk Decl. ¶ 13, Ex. N; Schuman Decl. ¶ 13, Ex. L.  The technology claimed in the '990 Patent is closely related to the technology at issue in the current case:  like the patents-in-suit, the technology claimed in the '990 Patent prosecuted by Fish enables mobile subscribers to access information stored on the Internet from mobile telephone devices.

### b.   The "PIM Sync" Matter

Current Fish principals Troesch, Lutton, and David Goren worked on a matter for Openwave that Fish referred to as "PIM sync over the phone" from October 2000 until at least August 2003. *See* Minsk Decl. ¶ 13, Ex. N.

PIM (short for Personal Information Manager) is described in several patents prosecuted by Fish on behalf of Openwave.  For example, the '676, '190, '345 and '079 Patents describe the PIM as follows:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

13

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

> The Web server implements the Web user interface for message
> access, service management, system management, PIM
> synchronization, and Internet data collection. . . .  The user can use
> a Web browser to access his or her calendar, address book, and to-
> do list. . . . The Personal Information Manager module manages a
> user's address book, calendar, and to-do list. . . . PIM
> synchronization over the Web is provided to make information on
> palm-top computers available to the user at any time anywhere by
> telephone or Web client access.

'676 Patent 14:12-38; '190 Patent 8:24-56; '345 Patent 8:30-57; '079 Patent 8:37-64.

Openwave's PIM is at issue in the current case.  The '120 Patent describes how a user can manage personal information via a Web browser and access it through their mobile phone:

> To categorize personalized information in the account, the web
> page 310 comprises entries to other specific service pages, such as
> Personal Organizer 314, Bookmarks 316 and Create a Message 318.
> All these pages are accessible by the user to personalize his desired
> information therein. FIG. 8, for example, is a page 326 of the
> Personal Organizer 314 showing a personalized address book 320
> that allows the user to edit his frequently contacted people's phone
> numbers and other information. FIG. 9 is a page of the Bookmarks
> 316 that allows the user to establish a list of web sites he may
> frequently visit through his cellular client 200, for example,
> StockTIPS referenced by 322 allows the user to keep a list of stock
> symbols there. With the personalized bookmarks, the user, when on
> the go, can quickly enter into the web pages having his list of
> stock symbol to look up for the prices thereof currently being traded
> in the stork market without keying in any symbols at all.

Schuman Decl. ¶ 6, Ex. E ('120 Patent) 14:59-15:9.  Figure 8 of the '120 Patent shows how the user account can be personalized in accordance with the invention:

//

//

//

//

//

//

//

//

//

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

14

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)



Fig. 8

Schuman Decl. ¶ 6, Ex. E ('120 Patent) Fig. 8.

In its Patent L.R. 3-1 disclosures, Openwave identified the UP.Link 2.X-4.X as examples of products that practice the inventions claimed in the '120 Patent. Schuman Decl. ¶ 15, Ex. N. Openwave produced documents showing how UP.Link 2.X-4.X allows users to manage personal information and make it accessible through their mobile phones. *Id.* For example, the following excerpt describes the PIM service:



Schuman Decl. ¶ 16, Ex. O (July 1997 Using UP.PIM manual) 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

15

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

4.     **Over The Course Of Its Lengthy Representation Of Openwave,** ▮▮▮

Over the course of the seven-year relationship between Openwave and Fish, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Minsk Decl. ¶ 13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

C.     **Fish Appears In This Litigation And Refuses To Withdraw.**

Until last month, 724 Solutions was represented by the Sprinkle IP Law Group, P.C. *See* Dkt. No. 66 (Order permitting withdrawal). In mid-January 2010, 724 Solutions was acquired by Mobixell Networks, Inc. Dkt. No. 85 (Supp. Corp. Disclosure Stmt.). Around the time Openwave learned of the acquisition, Fish's David Barkan filed a notice of appearance in this case. Dkt. No. 50. Other Fish attorneys subsequently applied for, and were granted, permission to appear *pro hac vice*. Dkt Nos. 67, 68, 84.

Openwave promptly investigated the propriety of Fish's representation of 724 Solutions in this matter. Schuman Decl. ¶ 21. On February 2, 2010, Openwave demanded that Fish withdraw from representing 724 Solutions in this case in light of its prior representation of Openwave. Schuman Decl. ¶ 18, Ex. Q (Feb. 2, 2010 Letter). Fish refused to withdraw voluntarily.[5] Schuman Decl. ¶ 22.

//
//
//
//

---

[5] This is not the first time recently that Fish has turned on a former Bay Area client. Just last year, Fish attempted to litigate a patent case in the Eastern District of Texas against another former client, San Francisco-based Aliph, Inc.,who moved to disqualify Fish. Schuman Decl. ¶ 23, Ex. T. Fish withdrew in response to that motion to disqualify. Schuman Decl. ¶ 24, Ex. U.

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

**IV.   FISH MUST BE DISQUALIFIED UNDER RPC 3-310 BECAUSE OF ITS PRIOR REPRESENTATION OF OPENWAVE IN SUBSTANTIALLY RELATED MATTERS.**

**A.   Fish's Prior Representation Of Openwave Is Substantially Related To The Pending Case Where Fish Is Attempting To Represent A Party Adverse To Openwave.**

Fish's representation of 724 Solutions in this action plainly violates California Rule of Professional Conduct 3-310. Fish cannot dispute that Openwave is its former client. Nor can Fish dispute that the interests of its current client, 724 Solutions, are materially adverse to those of its former client, Openwave. Openwave has not consented to Fish's adverse representation of 724 Solutions in this matter.

Fish's former representation of Openwave is substantially related to its current representation of 724 Solutions:

*First*, Fish's work on the Motorola and Infogear oppositions required Fish attorneys to review, understand, and litigate technology and issues that are substantially related to the technology and issues in this case—systems and methods for delivering content and services to mobile phones. As demonstrated above, the U.S.P.T.O. considers the Motorola Application and at least four of the Openwave patents-in-suit to be in the **same narrow technical category**: "subject matter wherein at least one local computer provides a user interface and performs local data processing to interact with at least one remote computer . . . ." *See supra* III.B.1.a. Some of the **same prior art** was cited in opposition to both the Motorola '821 Patent and seven of the eight Openwave patents-in-suit. Indeed, the Motorola '821 Patent itself is a cited reference for three of the Openwave patents-in-suit and was wielded by a patent examiner as a basis for an obviousness rejection of claims in the application that led to issuance of Openwave's '022 Patent.



Minsk Decl. ¶ 9.

*See, e.g.*, Minsk Decl. ¶ 11-13, Exs. K, M, N.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

*See* Minsk Decl. ¶ 11, Ex. K.  As shown above, some of the same prior art is cited in the Motorola '821 Patent and the Openwave patents-in-suit.  Further, 724 Solutions has challenged the validity of at least four of the Openwave patents-in-suit, including the '022 Patent – the patent for which Openwave had to persuade the examiner that the Motorola '821 Patent did not render the subject matter of the application unpatentable on obviousness grounds.  *See* Dkt. No. 31 (Answer).  Thus, it is highly likely that 724 Solutions will argue in this case that the Motorola '821 Patent invalidates at least Openwave's '022 Patent.  Fish, having represented Openwave in connection with the foreign equivalent of the Motorola '821 Patent, and having analyzed that patent and the technology with, among others, Openwave's CTO Bruce Martin, cannot possibly turn around and wield this patent adversely to Openwave in this case.

*Second*, the other patent matters Fish attorneys worked on also involve substantially related technology.  Like the patents-in-suit, the "Voicemail Agent" and "PIM Sync" matters concern software that enables mobile phone users to access information and services available over the Internet.

*Third*, Fish's relationship with Openwave

Minsk Decl. ¶ 13.  724 Solutions has challenged that very strategy in this case, alleging that Openwave's patents should have been disclosed to the standards setting organization WAP/OMA, and that Openwave's enforcement of its patents against 724 Solutions constitutes "patent misuse."  Dkt. 31 (Answer) Ninth Defense, Fifth Counterclaim.

Minsk Decl. ¶ 11.  In short, Openwave will be severely prejudiced if Fish is permitted to turn on its former client and litigate adversely to Openwave armed with such insights and information, sometimes referred to as a former client's

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

DB2/21559764.1

18

NOTICE OF MOTION AND MOTION TO
DISQUALIFY DEFENDANTS' COUNSEL
CASE NO. 09-CV-03511 (RS, HRL)

1  "playbook." *See, e.g., Elan Transdermal Ltd.*, 809 F. Supp. at 1393 (disqualifying Irell &

2  Manella, former IP counsel to defendant, from representing adverse party in patent infringement

3  action); *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 688-689 (2004) (disqualifying

4  former counsel for insurance company based on former counsel's possession of former client's

5  "playbook" regarding handling of insurance coverage claims, practices and procedures).

6  **B.     Because Fish Attorneys Who Worked On Openwave Matters Must Be Disqualified, The Whole Fish Firm Must Be Disqualified.**

7  Under California law, where the disqualification of individual attorneys is required, the

8  disqualification of those attorneys' firm is also required. *See Med-Trans Corp.*, 156 Cal. App. 4th

9  at 665 (explaining that "the disqualification extends vicariously to the entire firm"). Here, eight

10  of the Fish attorneys who did work for Openwave are *currently* at Fish. Five of those attorneys—

11  including Hans Troesch who worked on at least eleven IP matters for Openwave—are resident in

12  Fish's relatively small Silicon Valley office. This is the same office where David Barkan, one of

13  the Fish principals who appeared for 724 Solutions in this matter, resides. Accordingly, the entire

14  Fish firm must be disqualified. *See, e.g., Hitachi*, 419 F. Supp. at 1164.

15  **V.     CONCLUSION**

16  For the foregoing reasons, Openwave respectfully requests that this Court disqualify Fish

17  from any further representation of 724 Solutions in this litigation.[6]

18

19  Dated: February 18, 2010                    MORGAN, LEWIS & BOCKIUS LLP

20

21

22  By /s/ Brett M. Schuman

      Brett M. Schuman

23    Attorneys for Plaintiffs

24

25

_____

26  [6] 724 Solutions was recently acquired by Mobixell Networks, Inc.  Dkt. No. 85 (Supp. Corp. Disclosure Stmt).  Openwave has subpoenaed Mobixell for information relating to this litigation

27  and Mobixell may be a successor-in-interest to the liabilities of 724 Solutions.  Accordingly, for clarity, this Court should Order that Fish may not continue to represent either 724 Solutions or its

28  new corporate parent, Mobixell, in connection with this litigation.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21559764.1                    19           NOTICE OF MOTION AND MOTION TO
                                               DISQUALIFY DEFENDANTS' COUNSEL
                                               CASE NO. 09-CV-03511 (RS, HRL)