NAGENDRA SETTY (*pro hac vice*)
CHRISTOPHER O. GREEN (*pro hac vice*)
GEORGE L. KANABE (*pro hac vice*)
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, Georgia 30309
Telephone:     404-892-5005
Facsimile:     404-892-5002
E-mail:          nsetty@fr.com
E-mail:          cgreen@fr.com
E-mail:          kanabe@fr.com

DAVID M. BARKAN
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:     650-839-5070
Facsimile:     650-839-5071
E-mail:          barkan@fr.com

*Attorneys for Defendants and Counterclaimants*
724 SOLUTIONS (US) INC. and
724 SOLUTIONS SOFTWARE INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS, INC., a Delaware corporation, and OPENWAVE SYSTEMS (ROI) Ltd., its Republic of Ireland Subsidiary,<br><br>                Plaintiff(s),<br><br>    v.<br><br>724 SOLUTIONS (US) INC., a Delaware corporation, and 724 SOLUTIONS SOFTWARE INC., a Delaware corporation,<br><br>                Defendant(s). | Case No. 09-CV-03511 (RS, HRL)<br><br>**724 SOLUTIONS (US) INC. AND 724 SOLUTIONS SOFTWARE INC.'S OPPOSITION TO PLAINTIFF OPENWAVE'S MOTION TO COMPEL (DOCKET No. 129)**<br><br>Date:       April 20, 2010<br>Time:      10:00 a.m.<br>Location:  Courtroom 2, 5th Floor<br>Judge:    The Honorable Howard Lloyd |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 3

II.     724 SOLUTIONS AND MOBIXELL SHARE A COMMON LEGAL
        INTEREST THAT SUPPORTS ASSERTION OF A JOINT DEFENSE
        PRIVILEGE ................................................................................................................. 4

III.    OPENWAVE SEEKS TO EVADE ITS AGREEMENT THAT
        PRIVILEGED DOCUMENTS CREATED AFTER FILING OF THE
        SUIT NEED NOT BE LOGGED ................................................................................. 10

IV.     OPENWAVE HAS SUBSTANTIALLY DISTORTED THE CASE AND
        CORRESPONDENCE RECORD TO SUPPORT ITS MOTION................................. 11

        A.      724 Solutions Has Produced Documents Responsive to
                Openwave's Requests ....................................................................................... 12

        B.      Mobixell and 724 Solutions Have Not "Conceded" Relevance Or
                Discoverability .................................................................................................. 12

V.      CONCLUSION .............................................................................................................. 13

1

1

# <u>TABLE OF AUTHORITIES</u>

2

CASES

3

*Britesmile, Inc. v. Discus Dental, Inc.*,
    2004 U.S. Dist LEXIS 20023 (N.D. Cal. 2004).......................................................... 2

4

5

*Hewlett Packard Co. v. Bausch & Lomb, Inc.*
    115 F.R.D. 308 (N.D. Cal 1987) ............................................................... passim

6

*Johnson Electric North America Inc. v. Mabuchi North America Corp.*,
    1996 U.S. Dist LEXIS 5227 (S.D.N.Y. April 18, 1996).......................................... 4, 7

7

8

*Nidec Corp. v. Victor Company of Japan*,
    249 F.R.D. 575 (N.D. Cal 2007) ............................................................... 5, 6

9

*Tenneco Packaging Specialty and Consumer Products, Inc. v. S.C. Johnson & Son, Inc.*
    1999 U.S. District LEXIS 15433 (N.D. Ill. Sept. 9, 1999) ....................................... 5

10

11

*United States v. Bergonzi*,
    216 F.R.D. 487 (N.D. Cal 2003) ............................................................... 2, 6, 7

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

## I.    INTRODUCTION

The threshold question for the Court is straightforward: Do Mobixell Networks Inc. ("Mobixell") and 724 Solutions (US) Inc. and 724 Solutions Software Inc. (together, "724 Solutions") share a common legal interest that supports their respective assertions of joint defense privilege?  That question is inescapably answered in the affirmative.

On January 21, 2010, after Openwave Systems, Inc.'s ("Openwave's") initiation of this suit, Mobixell acquired 724 Solutions *in toto* to create a "merged company." (Green Decl. ¶ 1, Ex. A., Mobixell Press Release Dated Jan. 21, 2010.)  That is, Mobixell acquired all assets and liabilities of 724 Solutions, and 724 Solutions is now a wholly-owned subsidiary of Mobixell.[1]   Every 724 Solutions product offering that Openwave has accused of infringement is now the responsibility of Mobixell.  This fact is readily apparent to the market, as marketing collateral for the accused products is now co-branded as originating from "724 Solutions – A Mobixell Company."  (Green Decl. ¶ 2,  Ex. B, Product Datasheets for Accused 724 Solutions Products.)  Moreover, even before Openwave initiated this suit, Mobixell and 724 Solutions partnered to create joint product installations for common customers, where the technology 724 Solutions brought to the partnership was the same technology Openwave now accuses of infringement.  (Green Decl. ¶ 3, Ex. C, Master Agreement for Joint Installation of 724 Solutions-Mobixell Technology.)[2]  Because of its prior partnership with and acquisition of 724 Solutions, Mobixell had every expectation it would ultimately end up participating in defending Openwave's infringement claims.  These facts cement the existence of a common legal interest between Mobixell and 724 Solutions, entitling them to communicate about the substance of Openwave's infringement claims without waiving any protections afforded by the attorney-client privilege or work product immunity.

---

[1]  Mobixell acquired a complete interest in the 724 Solutions entities named as defendants by acquiring a complete interest in 724 Solutions Holdings, of which the named 724 Solutions entities are wholly-owned subsidiaries.
[2]  Exhibit C describes a joint installation for customer DNA Networks Ltd., where 724 Solutions' accused XMG technology (also referred to as SAS – Seamless Access Solution) will be installed with Mobixell's "STI Interface."  (*See* Ex. C internal pp. 21, 22, 65, 70.)

3

Openwave's attempt to recast the Mobixell – 724 Solutions relationship as purely "commercial" lacks factual support and is legally incorrect.  Because Openwave fails to pierce the privilege, its efforts to evade prior discovery agreements controlling privilege logging under a newly-hatched "litigation" vs. "transactional" counsel distinction should likewise fail.  Additionally, to the extent responsive, non-privileged documents bearing on the claims or defenses in this action exist, 724 Solutions had committed to producing those documents **before** this motion was filed.  The Court should therefore deny Openwave's motion to compel.

## II.     724 SOLUTIONS AND MOBIXELL SHARE A COMMON LEGAL INTEREST THAT SUPPORTS ASSERTION OF A JOINT DEFENSE PRIVILEGE

The law of this and other districts confirms (and Openwave can not contest) that the common interest and joint defense privilege is properly used to shield discovery communications between separate parties in furtherance of such common interests.  *See United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal 2003); *Hewlett Packard Co. v. Bausch & Lomb, Inc.* 115 F.R.D. 308 (N.D. Cal 1987); *Britesmile, Inc. v. Discus Dental, Inc.*, 2004 U.S. Dist LEXIS 20023 (N.D. Cal. 2004).  Notably, "[t]he privilege ***does not require a complete unity of interests among the participants***, and it may apply where the parties' interests are ***adverse in substantial respects***." *Bergonzi*, 216 F.R.D. at 495 (emphasis added).   Fair and reasoned application of these rules and applicable precedents places Mobixell and 724 Solutions firmly within their rights in asserting the common interest privilege.

In *Hewlett Packard,* defendant Bausch & Lomb ("B&L") disclosed its patent attorney's opinion letter concerning validity and possible infringement of HP's patent to a potential purchaser of B&L's instrumentation business division.   Plaintiff HP argued B&L's disclosure constituted a waiver, and that compelling B&L to disclose the letter in litigation would "contribute to the truth finding goal of civil adjudication."  *Hewlett Packard*, 115 F.R.D. at 309.  Judge Brazil rejected HP's argument and declined to compel production of B&L's opinion letter.  Even though the prospective purchaser ultimately declined to acquire B&L's instrumentation division, Judge Brazil reasoned:

4

724 SOLUTIONS (US) INC. AND 724 SOLUTIONS SOFTWARE
INC.'S OPPOSITION TO PLAINTIFF OPENWAVE'S MOTION TO
COMPEL (DOCKET No. 129)
Case No. 09-CV-03511 (RS, HRL)'

> In short, it seems clear that defendant [B&L] and GEC [the prospective purchaser] anticipated litigation in which they would have a common interest. Moreover, their common interest would have been identical issues of law and of fact: was plaintiff's patent valid and enforceable, and, if so, did the one product that defendant and GEC marketed at different times infringe that patent?

Like the purchaser in *Hewlett Packard*, Mobixell fully understood that if it acquired 724 Solutions – and Mobixell in fact acquired 724 Solutions in its entirety – Mobixell would also acquire ongoing responsibility for managing the lawsuit, and would face potential exposure from making 724 Solution's accused products available to its existing customers. Even if Mobixell had not completed the acquisition, that Mobixell and 724 Solutions previously partnered to provide multiple customers with solutions incorporating the accused technology gave rise to still other concerns and common interests stemming from Openwave's infringement allegations. Openwave ratified all those concerns by arguing throughout its motion that "any analyses and communications shared between 724 Solutions and Mobixell regarding 724 Solutions' potential liability to Openwave are relevant to the issues of inducement and contributory infringement.'" (Dkt. # 129 at 6, 7, 8.)

The *Brightsmile* decision further builds on this district's precedent supporting a common interest privilege between Mobixell and 724 Solutions. In *Brightsmile*, defendant Discus had purchased teeth-whitening technology from inventor Dr. Salim Nahoo. Discus further shared with Dr. Nahoo certain documents concerning its counsel's investigation of whether Dr. Nahoo's teeth whitening technology: (a) infringed any patents, or (b) was itself patentable. *Brightsmile* at *6. Judge Larson found that Discus shared a "common legal interest" and did not waive any privilege from disclosure of analyses to Dr. Nahoo. *Id*. at *9. Building on *Hewlett Packard*, Judge Larson reaffirmed that:

> Unless it serves some significant interest courts **should not create procedural doctrine that restricts communication between buyers and sellers**, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or product they are considering buying.

5

*Id.* (emphasis added).  The facts surrounding Mobixell and 724 Solutions' transaction again square perfectly with *Brightsmile*.  Mobixell and 724 Solutions shared and continue to share a common interest in their respective attorneys' analyses of Openwave's asserted patents.  *Id.* at *6 (noting that Discus and Dr. Nahoo shared a common interest in the outcome of Discus' attorneys' analyses of the patentability and infringement issues).  Openwave presented no argument or evidence demonstrating a "significant interest" overcoming the privilege.  To the extent Openwave seeks to prove claims of contributory or induced infringement, it does not need privileged documents to do so.  Moreover, both 724 Solutions and Mobixell already produced non-privileged documents concerning their joint installations.[3]

Openwave attempts to distance itself from *Hewlett Packard* and *Brightsmile* by denigrating them as minority, outlier opinions substantially rejected by this and other districts.  That portrayal is inaccurate.

The Southern District of New York upheld a common interest privilege covering communications between an accused infringer and one of its customers in *Johnson Electric North America Inc. v. Mabuchi North America Corp.*, 1996 U.S. Dist LEXIS 5227 (S.D.N.Y. April 18, 1996).  Plaintiff Johnson Electric sought to compel production of documents that defendant Mabuchi's attorney provided to an attorney for Mabuchi's distributor, who was distributing potentially infringing products.  *Id.* at *8.  The *Johnson Electric* court applied the common interest privilege expansively to cover "communications made by the client or his lawyer to a lawyer representing another in a matter of common interest."  *Id.*  The court specifically noted that Mabuchi and its customer were "*de facto* allies" because they both faced a threat of liability if Johnson Electric prevailed on its infringement theories.  Importantly, the court also held that, although the common interest privilege is typically invoked in litigation, "the common interest principle ***does not require*** that both or indeed either, of the communicants are parties to a litigation."  *Id.* at *11 (emphasis added).  Just like Mabuchi and its customer, Mobixell and 724

_____

[3] 724 Solutions has produced responsive documents bearing production numbers 724S0055999-576075 concerning the joint installations.  Mobixell has produced responsive documents bearing production numbers Mobixell00090-217 pertaining to the joint installations.

6

1   Solutions were "*de facto* allies" both before and during their acquisition process.  That both were

2   not and are not named parties to the suit is of no consequence to the common interest analysis.

3       The Northern District of Illinois has upheld privilege assertions over opinion of counsel

4   letters disclosed to a defendant during an asset purchase negotiation in *Tenneco Packaging*

5   *Specialty and Consumer Products, Inc. v. S.C. Johnson & Son, Inc*. 1999 U.S. District LEXIS

6   15433, at *1 (N.D. Ill. Sept. 9, 1999).  The *Tenneco* court found a common legal interest between

7   the defendant and the discloser, noting "corporations have a community of interest when they have

8   an identical legal interest with respect to the subject matter of [the privileged] communication."

9   Mobixell and 724 Solutions had and continue to have identical legal interests in all issues pending

10  in the litigation, including the issues of non-infringement, invalidity, and unenforceability of

11  Openwave's asserted patents.  The *Tenneco* court, sharing a line of reasoning with the *Hewlett*

12  *Packard* decision, also observed that "substantial steps" were taken to maintain the confidentiality

13  of the privileged information, and that it was shared pursuant to a confidentiality agreement.

14  *Tenneco* at *11; *Hewlett Packard* 115 F.R.D. at 309.  Mobixell and 724 Solutions again follow suit,

15  having executed a non-disclosure agreement to govern exchanges of information made between

16  their respective counsel and executive teams during the course of merger discussions.  (Green Decl.

17  ¶ 4, Ex. D., Non-Disclosure Agreement.)

18      Although application of common interest principles is a threshold issue that drives complete

19  disposition of Openwave's motion, Openwave mustered little authority—buried at the end of its

20  brief—to support its (erroneous) contention that no such privilege exists here.

21      Openwave focuses on *Nidec Corp. v. Victor Company of Japan*, which is distinguishable

22  and does not apply to this analysis.  249 F.R.D. 575 (N.D. Cal 2007).  In *Nidec*, the majority

23  shareholder (Matsushita) of defendant Victor Company of Japan (commonly known consumer

24  electronics company "JVC") engaged in open solicitation of multiple bids to purchase Mitsushita's

25  JVC stock. As part of the bidding process, bidders received information concerning the lawsuit,

26  including a "litigation abstract originally prepared prior to the litigation by JVC counsel for JVC

27  management."  *Id* at 579.  Plaintiff Nidec sought discovery of the litigation abstract and other

28

7

1   communications shared with bidders by subpoenaing one bidder in particular, the TPG fund.  *Id*. at

2   577-578.   Judge Chen, in allowing discovery on the narrow issue of willfulness alone, expressly

3   distinguished the *Nidec* facts from multiple other precedents favoring preservation of a common

4   interest privilege.  Judge Chen held that JVC shared only a ***commercial*** interest with bidders for

5   JVC stock, who had no reasonable belief they would ultimately participate in defending Nidec's

6   infringement claims.

7           In the instant case, there appears little to indicate that [JVC] and the TPG
            fund might ever engage in joint litigation.  The TPG fund was simply
8           considering buying a majority share of JVC.  It will not likely become a
            joint defendant with JVC.

9

10  *Id*. at 579.  Judge Chen's conclusion is axiomatic in that shareholders of large, publicly-traded

11  companies such as JVC are not themselves named as defendants in patent infringement litigations,

12  do not face personal liability for any judgment, and are not called upon to participate in or manage

13  strategy for defending the claims. Moreover, JVC provided no indication that it took precautions to

14  safeguard the confidentiality of information it provided to multiple prospective bidders.

15          Openwave therefore inaptly applies the *Nidec* opinion to this case.  724 Solutions, a

16  privately held company, engaged Mobixell in ***confidential*** discussions directed towards Mobixell's

17  complete acquisition of 724 Solutions.  Unlike the prospective JVC stockholders, Mobixell

18  negotiated for control of ***all*** assets and liabilities of 724 Solutions, including liabilities potentially

19  flowing from this litigation.  Openwave's acknowledgement that it seeks this discovery to further

20  claims of induced and contributory infringement further cements application of common interest

21  principles, and confirms Mobixell's need to participate in formulation of legal strategy. This case is

22  not, as Openwave asserts, one of two companies merely discussing "joint business strategy which

23  happens to include as one of its elements a concern about litigation."  (Dkt. #129 at 12 (emphasis

24  omitted).)

25          Openwave essentially reinvents *Nidec* into a blanket rule that common interest principles

26  apply only to entities who are jointly named as parties to an active litigation and whose interests are

27  identical in all respects.  Multiple courts have rejected that premise including the *Bergonzi* decision

28

8

1   Openwave cites (Dkt. # 129 at 12) as articulating the test for application of common interest

2   privilege. *Bergonzi*, 216 F.R.D. at 495. ("[t]he privilege ***does not require*** a complete unity of

3   interests … and it may apply where the parties' interests are adverse in substantial respects."

4   (emphasis added).)

5          Openwave made one, last ditch effort to distance itself from *Hewlett Packard* by arguing

6   that no common interest exists because Mobixell "purchased 724 Solutions Holdings, Inc., and

7   maintains 724 Solutions as a wholly-owned subsidiary" rather than via an asset purchase agreement.

8   (Dkt. #129 at 14.)  This illogical conclusion amounts to little more than a "Hail Mary" pass play.

9   Neither *Hewlett Packard*, nor any other court, has restricted common interest privilege to deals

10  structured as an "asset purchase."   The structure Mobixell created when it merged 724 Solutions

11  into a wholly-owned subsidiary provides no insulation for either entity against Openwave's claims

12  of infringement, whether based on a theory of direct, induced or contributory infringement.  Nor can

13  Mobixell take any comfort that its corporate structure will protect existing customers who seek to

14  purchase 724 Solutions' legacy products from the newly merged Mobixell-724 Solutions entity.

15  Carrying Openwave's "corporate structure" argument to its full extent, Mobixell can not assert

16  privilege over even ***post-acquisition*** communications with subsidiary 724 Solutions concerning the

17  lawsuit.  That is, under Openwave's view, 724 Solutions is merely a "wholly-owned subsidiary"

18  with whom non-party Mobixell shares only a "commercial" interest.  That result is inarguably

19  absurd, and has been preemptively rejected by multiple courts holding that application of common

20  interest principles ***do not require*** that both, or even either, of the communicating parties be involved

21  in litigation.  *See Johnson Electric North America Inc. v. Mabuchi North America Corp.*, 1996 U.S.

22  Dist LEXIS 5227 (S.D.N.Y. April 18, 1996).

23         To the extent Mobixell and 724 Solutions have exchanged communications concerning the

24  claims and defenses in this suit, those exchanges were made: (1) in the course of a common interest

25  in defending against Openwave's patent infringement allegations, (2) for the purpose of furthering

26  their collective defenses, and (3) without creating any waiver.  *Bergonzi*, 216 F.R.D. at 495.

27

28

1   Therefore, the common interest and joint defense privileges apply, and this Court should deny

2   Openwave's motion to compel disclosure of these privileged communications.

3

4   **III.    OPENWAVE SEEKS TO EVADE ITS AGREEMENT THAT PRIVILEGED**
          **DOCUMENTS CREATED AFTER FILING OF THE SUIT NEED NOT BE**
5         **LOGGED**

6

7        724 Solutions and Mobixell have operated under the terms of a concise and clearly

8   documented agreement that governs which privileged documents should be identified on a privilege

9   log:

10              Brett,

11              I just wanted to confirm our agreement today with respect to how to
                handle documents/information protected by the attorney-client
12              privilege/work product doctrine. Specifically, we have agreed that, to the
                extent a discovery request seeks any such documents/information created
13              on or after July 31, 2009, the date that Openwave filed its Complaint, the
                parties do not need to list such documents/information on a privilege log.
14

15              BMS: Agreed.

16

17   (Green Decl.¶ 7, Exhibit G, Dec. 17, 2009 email from S. Crocker to B. Schuman.)

18        Openwave takes great pains to recast this agreement as only applying to communications

19   with "outside litigation counsel" and not to communications with "non-litigation" or "transactional"

20   counsel.  (Dkt. # 129 at 10-11.)  Yet, Openwave's "litigation" vs. "non-litigation" distinction

21   appears ***nowhere*** within the text of the agreement, a circumstance that likely explains why

22   Openwave failed to set forth the full text of this agreement in the text of its brief.  More specifically,

23   the parties' agreement does not even mention the word "counsel."  The Agreement is defined ***solely***

24   by the categories of documents and information it governs – namely, documents and information

25   subject to the attorney-client privilege or the work product doctrine. The agreement serves a

26   practical purpose and should remain in place as originally written.

27

28

                                                 10

1    Openwave understands and acknowledges that the agreement is intended to alleviate

2    unnecessary expense and burden associated with logging post-filing communications between

3    counsel and parties.  (Dkt. #129 at 11.)   Nonetheless, by petitioning the Court to inject a concocted

4    "litigation" vs.  "non-litigation" counsel distinction, Openwave demands that Mobixell undertake

5    the very same privilege logging expense and burden that Openwave has excused itself from

6    performing.  That Mobixell is a non-party is of no consequence.  The communications Mobixell

7    will be forced to log are largely the same set of documents 724 Solutions was excused from logging

8    – a result that effectively undoes the entire agreement.  That the logging will be done in the name of

9    Mobixell rather than 724 Solutions provides no abatement of burden and expense, as the merged

10   entity is represented by the same counsel for purposes of this litigation.

11   Notwithstanding the inequity of Openwave's revisionist approach, its "litigation" vs. "non-

12   litigation" distinction is poorly conceived and largely impractical.  As a threshold matter, by what

13   standard would an attorney qualify as "litigation" counsel?   Must that attorney have entered a

14   formal appearance, or is it sufficient for that attorney to have simply offered advice on some matter

15   connected to the litigation?  Likewise, must an attorney function solely as "litigation" counsel in all

16   respects to receive the benefit of the agreement, or will a logging requirement trigger the moment

17   that same attorney offers advice of a "transactional" nature (however Openwave intends to define

18   "transactional")?  Addressing these and all other definitional problems would require substantial

19   red-lining of the agreement's straightforward terms and take it far afield from its intended purpose.

20   In sum, this is not, as Openwave protests, a game of "gotcha" by 724 Solution and Mobixell.

21   (Dkt. #129 at 11.)  It is a tactical maneuver by Openwave to evade an agreement freely made, for a

22   legitimate and well-founded purpose, in hopes of obtaining a newly-perceived litigation advantage.

23   **IV.    OPENWAVE HAS DISTORTED THE CASE AND CORRESPONDENCE RECORD**
       **TO SUPPORT ITS MOTION**

24

25   Litigants who engage in "tit for tat" criticisms of one another seldom advance the merits of

26   any issue.  Unfortunately, first impressions are important, and Openwave has taken great pains to

27   portray all of 724 Solutions and Mobixell's discovery activity as "confirming" or "maintaining"

28

11

1    refusals so as to prevent "any headway" in discovery.  *Id.* at 2-5.  These and other assertions are

2    false.

A.    **724 Solutions Has Produced Documents Responsive to Openwave's Requests**

4              Openwave states that 724 Solutions has refused to produce any documents or information

5    concerning "the Mobixell -724 transaction, Openwave, the patents-in-suit, and this litigation."

6    (Dkt. # 129 at 1.)  That statement is incorrect.  Before Openwave filed this motion, 724 Solutions

7    and Mobixell produced thousands of document pages relating to their joint installations and prior

8    transactions, which are responsive to the Mobixell subpoena and Openwave's third set of Requests

9    for Production. (Green Decl ¶¶ 5 & 6, Exs. E and F.)  Additionally, in correspondence dated March

10   8, 2010 (also before Openwave filed this motion) 724 Solutions and Openwave agreed on a list of

11   "key terms" for searching 724 Solutions' electronically stored information (Green Decl.¶ 8, Ex. H.)

12   That list specifically includes terms such as "Openwave," and the numbers of all patents-in-suit.

13   The content of this production is more fully described in 724 Solutions response to Openwave's

14   separate co-pending motion to compel (Dkt. # 74), concurrently filed on this date.  Openwave also

15   received a redacted copy of the Mobixell-724 Solutions merger agreement from Mobixell on

16   February 3, 2010, therefore its complaints that it did not receive an additional copy of that same

17   agreement from 724 Solutions should not resonate.

B.    **Mobixell and 724 Solutions Have Not "Conceded" Relevance Or Discoverability**

19             Openwave inaccurately and repeatedly asserts that 724 Solutions and Mobixell somehow

20   "conceded" that all documents Openwave requested are "relevant."  (Dkt. # 129 at 5.)  Openwave

21   demanded unfettered access to "all documents" pertaining to corporate transactions between

22   Mobixell and 724 Solutions, including the complete merger agreement and "any escrow

23   provisions," but failed to proffer any authority or explanation linking that demand to the claims and

24   defenses in this case.[4] (Dkt. 129 at 6.)  Both parties objected on the grounds that merger documents

25   (and escrow provisions) have ***no bearing*** on any issue concerning Openwave, the patents-in-suit, or

---

[4] To the extent Openwave argues the merger agreement provisions are relevant to any issues of
    valuation or damages, Openwave attempts to circumvent yet another discovery agreement.  The

1    this litigation.  (*Id.*, Schuman Decl., ¶ 20, Ex. P 8:6-9).  Neither 724 Solutions nor Mobixell

2    established a *per se* test for "relevance" in lodging that or other objections.

3         Openwave further morphed correspondence from 724 Solutions and Mobixell's counsel,

4    offered in good faith advance resolution of these issues, into an admission that information

5    exchanged between 724 Solutions and Mobixell "pertaining to this lawsuit" is automatically

6    discoverable due to its "relevance."  (*Id.*, Schuman Decl., ¶ 27, Ex. V.)  That 724 Solutions

7    provided Mobixell with information concerning this suit as part of becoming Mobixell's wholly-

8    owned subsidiary is an unremarkable and not unexpected occurrence.  What matters is that those

9    exchanges are subject to a common interest and joint defense privilege for all the reasons outlined

10   above – rationale that the undersigned counsel painstakingly set forth for Openwave both in the

11   course of meet and confer efforts and in correspondence.

12        Openwave even goes so far as to declare that "Judge Seeborg has acknowledged" that the

13   "purchase price" Mobixell paid for 724 Solutions is relevant and should be disclosed.  (*Id.* at 6.)

14   Strangely, Openwave's cited support for this proposition is the Court's order denying Openwave's

15   ill-conceived motion for a temporary restraining order, which makes no pronouncement on the

16   relevance (or lack thereof) of any particular information.  (Dkt. # 64.)

17        Openwave's focus on so-called concessions and endorsements of "relevance" is apparently

18   intended to equate relevance with discoverability in all instances – including those where privilege

19   should apply, and where Openwave lacks any basis to overcome the privilege.

20   **V.    CONCLUSION**

21        For the reasons stated herein, the Court should deny Openwave's Motion to Compel

22   production of documents subject to the joint defense and common interest privilege, as well as the

23   discovery of other documents and information concerning the Mobixell-724 Solutions merger that

24   are not relevant to the claims and defenses pending in this action.

25

26

27

28   parties agreed to defer all such discovery other than "top-line revenue" until after claim
     construction proceedings.

13

Dated:  March 30, 2010

FISH & RICHARDSON P.C.


By: */s/ Christopher O. Green*
     Christopher O. Green

*Attorneys for Defendants and Counterclaimants*
*724 Solutions Inc. and 724 Solutions Software*
*Inc.*

12125566.doc

14