DANIEL JOHNSON, JR. (State Bar No. 57409)
BRETT M. SCHUMAN (State Bar No. 189247)
AHREN C. HOFFMAN (State Bar No. 250469)
RYAN L. SCHER (State Bar No. 244706)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California  94105-1126
Telephone:     415.442.1000
Facsimile:     415.442.1001
E-mail:        djjohnson@morganlewis.com
E-mail:        bschuman@morganlewis.com
E-mail:        ahoffman@morganlewis.com
E-mail:        rscher@morganlewis.com

Attorneys for Plaintiffs and Counterdefendants
OPENWAVE SYSTEMS, INC. and OPENWAVE
SYSTEMS (ROI) LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS, INC., a Delaware corporation, and OPENWAVE SYSTEMS (ROI) LTD., its Republic of Ireland subsidiary,<br><br>Plaintiffs,<br><br>v.<br><br>724 SOLUTIONS (US) INC., a Delaware corporation, and 724 SOLUTIONS SOFTWARE INC., a Delaware corporation,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No. 09-CV-03511 (RS, HRL)<br><br>**OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

CASE NO. 09-CV-03511 (RS, HRL)

Pursuant to the Court's Order for Supplemental Briefing (Dkt. #152), Openwave hereby submits its supplemental brief addressing the decision of the California Court of Appeal in *Kirk v. First American Title Co.*, Case No. B218956, filed April 7, 2010 (hereafter "*Kirk*").

## I.   <u>INTRODUCTION</u>

In *Kirk*, the Court of Appeal began by noting that "we are not concerned with the issue of disqualifying the attorney possessing the material client confidences from representing an adverse party; it is conceded that the attorney is disqualified from doing so." Slip Op., at 3.  *Kirk* then addresses whether "screening" of a transitory, firm-switching attorney might be sufficient to stave off vicarious disqualification of the tainted attorney's new law firm.

In discussing *Kirk*, pursuant to the Court's order, Openwave also assumes that one or more Fish attorneys are conflicted and disqualified based on Fish's prior, multi-year and multi-matter IP representation of Openwave.  In its briefing and at the March 25, 2010 hearing, Openwave demonstrated a "substantial relationship" between at least some of Fish's prior IP work for Openwave and the present case.  Fish argued that Openwave had shown nothing more than "general technical similarities" between its prior work for Openwave and the issues in the pending case.  At the hearing, the Court acknowledged that Openwave had done "more than that." *See* Transcript of Proceedings, Dkt. 154, at 36:22-24.  Openwave established a substantial relationship between Fish's prior representation of Openwave and the issues in the pending case, giving rise to the *conclusive presumption* that confidences material to the current case were conveyed by Openwave to Fish attorneys.  *See City & Cty. of San Francisco v. Cobra Solutions, Inc.*, 38 Cal.4th 839, 847 (2006).  Indeed, Openwave went even further and, through the testimony of its former in-house Patent Counsel, established that confidences material to the pending case very likely were actually conveyed by Openwave to Fish attorneys during the course of Fish's multi-year prior representation of Openwave.

*Kirk* confirms that "vicarious disqualification is the general rule" in California.  *See* Slip Op., at 28.  *Kirk* then says that the California Supreme Court has not foreclosed the possibility of ethical screening to avoid disqualification under the particular circumstances presented by the *Kirk* case, *i.e.*, when a transitory, firm-switching attorney joins an otherwise conflict-free law firm

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

1

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

with material confidences and is timely and effectively screened from other firm lawyers. Openwave's pending motion to disqualify Fish is based on fundamentally different facts and circumstances:  Fish never was a conflict-free law firm, and Openwave's motion is not based on the arrival at Fish of any tainted, firm-switching attorney.  Fish – and current Fish principals – worked on Openwave matters that are substantially related to the present case.  Fish has personal and institutional knowledge of these confidences, *i.e.*, hardcopy and electronic files, emails, *etc.*, from its prior representation of Openwave.

For over 20 years, courts have acknowledged that "exceptions exist where an entire law firm has not been disqualified despite disqualification of one member."  *Klein v. Superior Court,* 198 Cal.App.3d 894, 909 (1988).  To the extent that *Kirk* breaks any new ground at all, it merely creates another exception to the general rule of vicarious disqualification in a factual setting that has no relationship to the pending motion.  In short, *Kirk* is inapposite to Openwave's motion.

## II. TO THE EXTENT IT SUGGESTS A POSSIBLE FUTURE EVOLUTION IN CALIFORNIA LAW, *KIRK* IS NOT CONTROLLING

"Motions to disqualify are decided under state law."  *All American Semiconductor, Inc. v. Hynix Semiconductor, Inc.*, 2008 WL 548552, *4 (N.D.Cal. Dec. 18, 2008) (Hamilton, J.) (holding that "[t]he established rule in California is that where an attorney is disqualified from representing a client because that attorney previously represented a party with adverse interests in a substantially related matter that attorney's entire firm must be disqualified as well, regardless of efforts to erect an ethical wall").

In ascertaining state law, "federal courts are bound by the pronouncements of the state's highest court on applicable state law."  *Creighton v. City of Livingston*, 628 F.Supp.2d 1199, 1217 (E.D.Cal. 2009).  "Where the state's highest court has not decided an issue, the task of the federal court is to predict how the state high court would resolve it."  *Id.*  "In assessing how a state's highest court would resolve a state law question – absent controlling state authority – federal courts look to existing law without predicting potential changes in that law."  *Id.* (citing *Moore v. R.G. Indus., Inc.*, 789 F.2d 1326, 1327 (9th Cir. 1986));[1] *see also Hitachi, Ltd. v. Tatung*

---

[1] Emphasis in quotations is supplied unless otherwise noted.

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

DB2/21667023.2

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

1  *Co.*, 419 F.Supp.2d 1158, 1164 (N.D.Cal. 2006) (Breyer, J.) (rejecting use of ethical screen

2  because "although the law in California may be at a critical shift, this Court is bound to follow

3  California law as it presently exists"); *All American Semiconductor*, 2008 WL 548552 at *8

4  (relying on recent California Supreme Court decision rejecting ethical screen as supporting

5  court's decision to reject ethical screen in the case before it).

6        The California Supreme Court has never endorsed ethical screens in any private law firm

7  context in any case to date. *See, e.g., All American Semiconductor*, 2008 WL 5484552, at *8.[2]

8  Indeed, the California Supreme Court has rejected the use of ethical screens in at least some

9  public law office contexts, creating significant doubt whether it will endorse the use of such

10  screens in the private law firm context. *See City and County of San Francisco v. Cobra*

11  *Solutions, Inc.*, 38 Cal.4th 839 (2006) (holding that San Francisco City Attorney's conflict, based

12  on substantial relationship test, required vicarious disqualification of entire City Attorney's

13  office). In its most recent decision addressing the issue of vicarious disqualification, *In re*

14  *Charlisse C.*, 45 Cal.4th 145 (2008), the Supreme Court endorsed the use of an ethical screen in

15  the context of a public law office. The Court drew a distinction between the public and private

16  law contexts, casting further doubt on whether the Court will endorse screening in the private law

17  firm context at all: "Unlike their private sector counterparts, public sector lawyers do not have a

18  financial interest in the matters on which they work. As a result, they have much less, if any,

19  incentive to breach client confidences." *Id.*, at 163.

20        Of course, *Kirk* is not a decision of the California Supreme Court. And, as the opinion

21  notes, "more recent opinions are not consistent" regarding the efficacy of ethical screens under

22  California law. *See* Slip Op., at 25-26 ("Other courts, however, have continued to state that the

23  rule of vicarious disqualification is absolute") (citations omitted). The California Supreme Court

---

[2] In *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994), the Supreme Court said that "disqualification extends vicariously to the entire firm." In *Kirk*, the Court of Appeal dismisses this statement as dicta, which may or may not be, but the statement certainly does not suggest the California Supreme Court endorses the use of ethical screens in the private law firm context. In *People ex rel. Department of Corporations v. SpeeDee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1151 (1999), the Supreme Court simply refused to consider the question. In *Kirk*, the Court of Appeal interprets this refusal as a suggestion that the viability of ethical screens "is still an open question." It may or may not be, but, again, nothing in *SpeeDee Oil* suggests the California Supreme Court endorses the use of ethical screens in the private law firm context.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

3

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

1  may review and reject the exception carved out by *Kirk* for screening of a tainted, firm-switching

2  private law firm attorney. Or it may deny review of the case. Either way, *Kirk* does not provide

3  any reason for this Court to depart from the well-established vicarious disqualification rule on the

4  facts of this case. *See Aetna Cas. & Surety Co. v. Sheft*, 989 F.2d 1105, 1106-7 (9th Cir. 1993)

5  ("we must determine how we believe the highest court of California would decide *this case* if it

6  were presented for decision").

7  **III. _KIRK_ IS READILY DISTINGUISHABLE**

8          *Kirk* addressed the issue of whether and how to apply the general rule of vicarious

9  disqualification to a case involving a transitory, firm-switching attorney (Cohen) who was tainted

10 by a very limited exposure to confidential information (a single, seventeen-minute phone

11 conference with plaintiff's counsel) prior to joining the firm that was the target of the

12 disqualification motion. The conflict arose after both Cohen (from Fireman's Fund Insurance

13 Company) and a group of lawyers the Court of Appeal dubbed "the First American team" (from

14 the Bryan Cave law firm) joined the Sonnenschein law firm within a month of each other. The

15 *Kirk* opinion describes the First American team as "uniquely and extensively knowledgeable

16 about First American personnel, products, services, data systems, history and organization on a

17 national basis." Slip Op., at 4-5. The opinion states the First American team had "defended First

18 American in 80 class actions across the country." *Id.*

19         Cohen joined Sonnenschein's San Francisco office as a member of the insurance

20 regulatory practice on January 5, 2009. *Id.*, at 6-7. The First American team joined

21 Sonnenschein's Los Angeles and St. Louis offices on February 2, 2009. *Id.*, at 7. "None of the

22 First American team moved to the San Francisco office, where Cohen was located. Nor does it

23 appear that any of them were part of the insurance regulatory practice group." *Id.* Two days after

24 the First American team joined Sonnenschein, Sonnenschein's General Counsel established an

25 ethical screen around Cohen and distributed a memorandum setting forth mandatory screening

26 procedures. Cohen left the Sonnenschein firm in or about January 2010. *Id.*, at 53.

27         It was on these facts, and under these circumstances, that the *Kirk* court held that vicarious

28 disqualification of the entire Sonnenschein firm from representing First American in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

4                                    CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

1  underlying class actions was not "automatic."  Interpreting the State Bar's recent *rejection* of a

2  new ethical rule that would have allowed for limited screening when a lawyer moves from one

3  private law firm to another, the *Kirk* court said:  "we agree with the Board of Governors

4  [Committee on Regulation and Admissions] that the issue of whether attorney screening can

5  overcome vicarious disqualification <u>in the context of an attorney moving between private law

6  firms</u> is not clearly settled in California law."  The *Kirk* court held that "<u>[w]hen a tainted attorney

7  moves from one private law firm to another</u>, the law gives rise to a rebuttable presumption of

8  imputed knowledge to the law firm, which may be rebutted by evidence of effective ethical

9  screening."  *Id.*, at 50.  The *Kirk* court did <u>not</u> hold that the Sonnenschein firm should not be

10  disqualified.  Rather, it remanded the case for the trial court to make that determination in the

11  light of the appellate court's opinion.

12      *Kirk* is readily distinguishable on a number of grounds and neither its rationale nor its

13  holding applies here.

14      *First*, and most significantly, the case before this Court does not involve any tainted firm-

15  switching attorney joining an otherwise conflict-free law firm.  Fish represented Openwave, and

16  Fish is now attempting to appear adverse to Openwave on behalf of 724 Solutions.  As Openwave

17  demonstrated in its motion, many Fish attorneys in various Fish offices around the country

18  worked on Openwave matters, including matters that are substantially related to the present case.

19  *See* Motion, Dkt. #89, at 7:1-3.  Five of those attorneys – including Hans Troesch, who was the

20  supervising Fish principal on the Australian opposition matters Fish handled for Openwave – are

21  currently principals/of counsel in Fish's relatively small Redwood City office, where 724's

22  counsel of record David Barkan is resident.  Although one of the conflicted Fish lawyers (Leland

23  Wiesner) has since left Fish, it is well-established that is irrelevant and *Kirk* does not portend any

24  change in the law on this issue.  *See, e.g., Asyst Technologies v. Empak, Inc.* 962 F. Supp. 1241,

25  1242, n.3 (N.D.Cal. 1997) ("I fail to see how a tainted firm is cleansed by the departure of one of

26  the attorneys who created the conflict"); *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809

27  F. Supp. 1383, 1388-90 (1992).[3]

---

[3] Fish argued in its opposition to Openwave's disqualification motion that "[t]he F&R lawyers primarily responsible

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

28

DB2/21667023.2

5                    CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

*Second*, and relatedly, some of the conflicted and disqualified Fish lawyers, *e.g.*, Hans Troesch, reside in the *same* Fish office as 724's current counsel of record and are in the *same* practice group/"technology sectors." *See* Dkt. 50; Ex. A. In *Kirk*, the court made a point of noting that the conflicted lawyer Cohen resided in a *different* Sonnenschein office than the First American team and was in a *different* practice group than the lawyers on the First American team. Slip Op., at 7. This distinction goes to the very heart of the rationale for the *Kirk* decision, *i.e.*, that the "changing landscape of legal practice" supposedly no longer justifies the "pragmatic recognition that the confidential information will work its way to the nontainted attorneys at some point":

> The instant case illustrates the changing landscape of legal practice – we are concerned with the tainted attorney working in a different geographical office and in a different practice group from the attorneys with responsibility for the litigation. These are not attorneys discussing their cases regularly, passing each other in the hallways, or at risk of accidentally sharing client confidences at lunch. In a situation where the 'everyday reality' is no longer that all attorneys in the same law firm actually 'work together,' there would seem to be no place for a rule of law based on the premise that they do

Slip Op., at 30-31. The *Kirk* court was careful to note that it was not endorsing screening for all cases: "We therefore wish to emphasize that we are not adopting a broad rule permitting ethical screening in all cases. In this case, we are simply holding that, consistent with prior authority, in the proper situation, ethical screening may be sufficient to rebut the presumption of imputed knowledge." *Id.*, at 31, fn. 21. <u>No case – including *Kirk* – suggests or holds that unilateral screening may be sufficient to avoid vicarious disqualification of a private law firm when conflicted and disqualified lawyers work in the same local office as lawyers acting adversely to the firm's former client.</u> *See also Hitachi*, 419 F.Supp.2d at 1165 ("The small size of Greenberg's Silicon Valley intellectual property department exacerbates the problem of proximity and leads the Court to conclude that the ethical wall is insufficient").

---

for this litigation, Nick Setty and Christopher Green, both joined the firm in 2006." Opp., Dkt. #105, at 6:6-10. That too is irrelevant, and not the same thing as the firm-switching tainted attorney that was at issue in *Kirk*. In *Kirk*, one transitory attorney arguably could be screened; here Messrs. Setty and Green joined a firm years ago that had previously represented Openwave and maintained electronic and other files presumptively containing confidential information relating to Fish's prior representation of Openwave.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

6

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

*Third*, the *Kirk* court clearly was motivated by the hardship that would befall First American if its long-time class-action counsel – the "First American team" – was to be disqualified.  Slip Op., at 4-5; *see also id.*, at 48 ("Now, however, with the proliferation of multi-office 'mega-firms,' frequent firm mergers, and attorneys increasingly changing firms throughout their careers, clients are at greater risk of finding their *longstanding attorney-client relationships* challenged due solely to their counsel's changing affiliations").  Hardship to a litigant that stands to be deprived of its current counsel is an established factor to be considered in connection with a disqualification motion, albeit one that is of lesser importance than the former client's interest in preserving its confidences.  *See, e.g., City & Cty. of San Francisco*, 38 Cal.4th at 851 ("Current clients have a right to retain their chosen counsel . . . .  With respect to former clients, they have an *overwhelming* interest in preserving the confidentiality of information they imparted to counsel during a prior representation").  Here, Fish made no showing that it had any prior relationship with 724 Solutions whatsoever.  Indeed, as the Court knows, for the first six months of this case 724 Solution was represented by a different law firm, the Sprinkle IP Law Group, until Fish appeared through Mr. Barkan on January 19, 2010.  *See* Dkt. 50.

*Fourth*, to the extent the *Kirk* opinion suggests a balancing of policy considerations rather than automatic vicarious disqualification in some cases, that is nothing new – even if the *particular balancing* of those factors by the *Kirk* court with respect to firm-switching attorneys and private law firms may be evolutionary.  *Compare* Slip Op., at 39-40 (listing policy considerations) *with All American Semiconductor*, 2008 WL 5484552 at *11 (identifying same policy considerations, assessing them, and rejecting argument that ethical screen was sufficient to stave off disqualification in successive representation case).  Indeed, *Kirk* cites *SpeeDee Oil* for the pertinent policy considerations.  *See* Slip Op., at 39-40.

As Openwave has demonstrated, application of these factors requires disqualification of Fish on this record:  724 Solutions' right to its chosen counsel (initially Sprinkle IP Law, now Fish) and Fish's interest in representing 724 Solutions is relevant but subservient to the interests of former Fish clients and the need to protect the confidences reposed by those former clients in Fish, *see City & Cty. of San Francisco*, 38 Cal.4th at 851; the financial burden on 724 Solutions

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

7                    CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

to replace Fish should be relatively minimal, given that Openwave demanded that Fish withdraw just two weeks after Fish first appeared on behalf of 724 Solutions in this case; Openwave's motion is not tactically motivated; and the need to maintain ethical standards and public trust in the integrity of the bar favor precluding Fish from turning against one of its former IP clients in a substantially related IP case.[4]

## IV.   FISH DID NOT AND CANNOT MEET THE REQUIREMENTS FOR AN EFFECTIVE SCREEN IN ANY EVENT

After concluding that an ethical screen might be sufficient to stave off disqualification of the Sonnenschein firm, the *Kirk* court goes on to address the minimum requirements for an effective screen. *See* Slip Op., at 42-50. Even if this Court were to conclude, contrary to the discussion above, that an ethical screen was a possible remedy on the facts of this case, Fish did not and cannot show that it put in place an "effective" ethical screen as defined by *Kirk*.[5]

*First*, Fish has provided the Court with virtually no information regarding its purported ethical screen. In its opposition, Fish simply asserts that "[w]hen F&R received Openwave's February 2, 2010 letter demanding that it withdraw, the firm promptly screened the lawyers involved in F&R's prior work for Openwave from any contact with this litigation." Opp., Dkt. #105, at 6:3-4. Fish certainly did not make anything like the detailed showing made by the Sonnenschein firm in *Kirk*. *See also* Slip Op. at 25 ("The Supreme Court found it unnecessary to reach [the issue of whether an attorney can rebut the presumption of vicarious disqualification] in *SpeeDee Oil* because the court concluded that the firm failed to demonstrate an effective screening process had been established").

*Second*, the little information that Fish has provided is sufficient to conclude that its

---

[4] In its Statement of Recent Decision, Fish asserts (but does not explain) that *Kirk* "is relevant to a question the Court raised at argument:  whether it matters that the confidential information at issue here dates to 2001." Dkt. #150, at 10-12. *Kirk* did not address at all the relevance of the length of time since the prior, conflicting representation. Established California law rejects Fish's argument. *See Brand v. 20th Century Ins. Co.*, 124 Cal.App.4th 594, 607 (2004). Further, as Openwave explained in its prior briefing and at the hearing, many of the patents-in-suit were being prosecuted when Fish was representing Openwave in connection with substantially related matters, and working directly with Openwave employees involved in both matters, *e.g.*, CTO Bruce Martin, Patent Counsel Alan Minsk.  The temporal and substantive connection between the patents-in-suit and Fish's prior representation of Openwave supports disqualification.

[5] Fish cannot be heard to complain that it was unaware of the requirements for an effective screen.  *Kirk* cites other California cases, and the ABA Model Rules, for the necessary elements.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

8

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

1   screening was <u>not</u> sufficient. *Kirk* says that an effective screen must be timely, meaning that "a

2   firm must impose screening measures when the conflict first arises." Slip Op., at 43. Here, Fish

3   admits in its opposition that it did not impose any screening until it received Openwave's

4   February 2, 2010 letter – weeks after Fish first formally appeared in the case and likely even

5   longer after it first started representing 724 Solutions. It is unclear from Fish's opposition

6   whether Fish failed to perform a proper conflict check when it agreed to take on the matter for

7   724 Solutions or whether Fish decided, wrongly, that it did not have a conflict that prevented it

8   from taking on the matter. Either way, Fish's failure to timely screen is fatal. *See, e.g., Asyst*

9   *Techologies*, 962 F.Supp. at 1243 ("And whatever the efficacy and legal import of ethical screens,

10  nothing was in place here until after this motion was filed"). It is undisputed that Fish lawyers

11  representing 724 Solutions had access to Openwave confidences – whether stored in hardcopy

12  files or on Fish's electronic storage systems – for weeks or more prior to the imposition of any

13  screening by Fish, requiring disqualification.

14      *Kirk* also says that "notice to the former client" regarding the ethical screen is a "factor" to

15  be considered in evaluating the efficacy of an ethical screen. *See* Slip Op., at 48-49. It is

16  undisputed that Fish did not notify Openwave either that it was taking on the defense of 724

17  Solutions or that it had established any ethical screening to protect Openwave's confidences. *See*

18  *id.* ("Notice increases the public perception of the integrity of the bar, by making the interested

19  party aware of the potential threat to its confidential information and the measures taken to

20  prevent the improper use or disclosure of such information"). Openwave did not learn of Fish's

21  purported screen until Fish filed its opposition to Openwave's motion to disqualify, more than a

22  month after Openwave sent its February 2, 2010 letter asking Fish to withdraw.

23  ## V.   <u>CONCLUSION</u>

24      In sum, for the reasons explained above, *Kirk* has no bearing on this Court's resolution of

25  Openwave's pending motion to disqualify Fish from representing 724 Solutions in this case.

26  Openwave respectfully submits that its motion should be granted.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

9

CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY

1    Dated: April 13, 2010

2                                                MORGAN, LEWIS & BOCKIUS LLP

3

4                                                By /s/ Brett M. Schuman
                                                      Brett M. Schuman

5                                                Attorneys for Plaintiffs and
                                                 Counterdefendants  OPENWAVE
6                                                SYSTEMS, INC. and OPENWAVE
                                                 SYSTEMS (ROI) LTD.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/21667023.2

10                               CASE NO. 09-CV-03511 (RS, HRL)

OPENWAVE'S SUPPLEMENTAL BRIEF RE: MOTION TO DISQUALIFY