**\*\*E-filed 04/22/2010\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br><br> 724 SOLUTIONS (US) INC, et al., <br><br> Defendant. | No. C 09-3511 RS <br><br> **ORDER GRANTING MOTION TO DISQUALIFY COUNSEL** |

## I. INTRODUCTION

This motion presents the always sensitive subject of potentially disqualifying a party's chosen counsel. Here, the issue is whether defendants' counsel must exit this case because other attorneys associated with their firm represented plaintiff and its predecessors in connection with several matters between 1999 and 2004. A decision to disqualify counsel, never lightly made, is particularly difficult here, as the circumstances present a close call. That said, taking all relevant considerations into account, the motion must be granted.

## II. BACKGROUND

Plaintiff Openwave Systems, Inc. seeks to disqualify the law firm of Fish & Richardson from representing defendants 724 Solutions (US) Inc. and 724 Solutions Software, Inc. (collectively

"724") in this action, contending that Fish previously represented Openwave in a number of matters that should be considered "substantially related" to the subject matter of this litigation. In this action, Openwave asserts infringement by 724 of eight U.S. Patents.  At the most general level, the patents all describe inventions directed at enabling mobile phone users to access information and services available over the internet.  Defendant 724 sells software products to operators of mobile phone networks, to permit those operators to offer internet services to their customers.  Openwave contends those software products infringe its patents.

Until January of this year, 724 was represented solely by the Sprinkle IP Law Group, P.C. Apparently in connection with 724's acquisition by Mobixell Networks, Inc., Fish attorney David Barkan filed a notice of appearance on behalf of 724 on January 19, 2010.  Additional Fish attorneys subsequently applied for, and were granted, permission to appear *pro hac vice*, and the Sprinkle Law Group eventually withdrew.

Openwave and its predecessor companies were represented by Fish in a number of patent prosecutions and other patent matters beginning in late 1999 and continuing until 2004.[1]  The nature of that work is discussed further below.  When Fish appeared in this action, Openwave demanded that it voluntarily withdraw.  Fish declined to do so, but did put in place an "ethical wall" to ensure that its attorneys working on this matter would have no access to any documents or other information the firm might retain related to its prior representation of Openwave.  Pronouncing such prophylactic efforts legally and factually insufficient, Openwave filed this motion.[2]

### III.  LEGAL STANDARD

A motion to disqualify counsel implicates two competing issues: the client's right to the attorney of its choice versus the need to maintain ethical standards of professional responsibility.

---

[1]  Openwave's moving papers asserted the attorney client relationship continued until 2007, based on a listing of Fish as counsel for Openwave in a patent application as of February of that year. Fish has shown that its representation of Openwave actually terminated in 2004, and that Openwave disclaimed any attorney-client relationship with Fish regarding the patent application in 2007.

[2]  Fish retained outside counsel to represent it in opposing this motion.  Fish asserts that its attorneys representing 724 have not reviewed any of the motion materials submitted under seal.

2

*Jessen v. Hartford Cos. Ins. Co*., 111 Cal.App. 4th 698, 705 (2003). Counsel has an unquestionable duty to its former client to ensure the permanent confidentiality of matters disclosed in the course of any prior representation. *Derivi Construction & Architecture, Inc. v. Wong*, 118 Cal.App. 4th 1268, 1273 (2004). At the same time, a court must be mindful that where there is not a realistic risk of the use of confidential material, a litigant should not seek disqualification of its former counsel solely for the purpose of gaining a tactical advantage. *See Optyl v. Eyewear Fashion International Corp*., 760 F.2d 1045, 1050 (9th Cir.1985); *City and County of San Francisco v. Cobra Solutions, Inc*., 38 Cal.4th 839, 851-52 (2006).

Here, the parties are in nominal agreement that the applicable standard for determining whether disqualification is warranted is the "substantial relationship" test. See *Trone v. Smith*, 621 F.2d 994, 998. (1980). ("[t]he relevant test for disqualification is whether the former representation is 'substantially related' to the current representation."). As explained by the Ninth Circuit, "Substantiality is present if the factual contexts of the two representations are similar or related." *Id.* While the primary purpose of the substantial relationship test is to preserve the secrets and confidences communicated by a client to a lawyer, it does not require the former client to demonstrate that confidential information *actually* was disclosed. *Id*. at 999. Requiring such a showing would imperil the very confidences the rule is intended to protect. *Id*. "The inquiry is for this reason restricted to the scope of the representation engaged in by the attorney." *Id*.

In *H.F. Ahmanson & Co. v. Salomon Brothers, Inc*., 229 Cal.App.3d 1445(1991), the court identified three factors to be considered in applying the substantial relationship test: (1) the similarities between the two factual situations, (2) the legal questions posed, and (3) the nature and extent of the attorney's involvement with the cases. *Id*. at 1456.[3] The *Ahmanson* court also explained that,

> courts focus less on the meaning of the words "substantial" and "relationship" and look instead at the practical consequences of the attorney's representation of the former client. The courts ask whether confidential information material to the current

---

[3] District courts addressing disqualification motions commonly rely upon California cases, which apply the same substantial relationship test. See, e.g., *Elan Transdermal Ltd. v. Cygnus Therapeutic Sys.*, 809 F.Supp. 1383 (N.D.Cal.1992); *Huston v. Imperial Credit Commercial Mortgage Investment Corp.*, 179 F.Supp.2d 1157, 1167 (C.D.Cal.2001).

3

>dispute would normally have been imparted to the attorney by virtue of the nature of the former representation.

*Id.* at 1454

Fish's opposition to the present motion acknowledges the existence of the substantial relationship test, but presents it as if it were a poor substitute for the showing a party seeking disqualification ordinarily ought to be expected to make. Fish begins by repeatedly asserting in various ways that Openwave failed to show that material confidential information was actually obtained by Fish in the prior representation.[4] That may be so, but "it is well settled that actual possession of confidential information need not be proved to disqualify an attorney from representing the adversary of a former client in litigation against the former client." *Global Van Lines*, 144 Cal.App.3d at 489.

When Fish's opposition eventually turns to the substantial relationship test, it urges the Court to adopt an articulation of the standard espoused by the Board of Patent Appeals and Interferences in *Anderson v. Eppstein*, 59 U.S.P.Q 2d 1280 (B.P.A.I. 2001). In that action, the Board determined that disqualification was not warranted absent a showing that the patents involved in the successive representation concerned "identical or essentially the same" subject matter. 59 U.S.P.Q.2d at 1286. To the extent that *Anderson* creates a higher bar for disqualification than do the Ninth Circuit and California state authorities cited herein, it is not controlling and of little persuasive force. The proper inquiry is, as stated in *Ahmanson*, a practical one. Given what Openwave has established as to the nature and scope of Fish's prior representation, is it reasonable to assume that

---

[4] In this vein, Fish argues that it cannot be said to have violated Rule 3-310(E) of the California Rules of Professional Conduct because that rule forbids subsequent adverse representation only where the attorney "has obtained" material confidences. Fish asserts the rule does not extend to matters "only substantially related to a prior representation." While it is true that the rule does not expressly refer to a substantial relationship between successive matters, the point is that the substantial relationship test is a court-devised means for determining whether or not the attorney should be deemed to have obtained material confidences such that the rule would apply to bar the subsequent representation. See *Global Van Lines, Inc. v. Superior Court*, 144 Cal.App.3d 483, 487-488 (1983) (quoting predecessor to Rule 3-310(E) and observing, "[u]nder this rule, the initial question is whether the former representation is 'substantially related' to the current representation."); *Fremont Indem. Co. v. Fremont General Corp.*, 143 Cal.App.4th 50, 66-67 (citing Rule 3-310(E), followed immediately by explanation that where there is a substantial relationship between matters, possession of material confidences will be presumed).

4

confidential information material to the present action would normally have been imparted to Fish in the course of that representation?

## IV. DISCUSSION

### A. Patent prosecution work

Fish attorneys worked on ten patent prosecution matters for Openwave, resulting in the issuance of at least six patents between 2001 and 2004. Openwave contends that two of these matters have particular relevance to the present case. First, Openwave states the "Voicemail Agent Patent" matter (which resulted in the issuance of U.S. Patent No.7,286,990) is "closely related" to the issues here because the technology claimed in the '990 patent and the technology presently at issue both enable "mobile subscribers to access information stored on the Internet from mobile phone devices."

Second, Openwave contends that Fish's work on the "PIM Sync over the phone" matter is substantially related to this action. PIM is a generic acronym for "Personal Information Manager." One of the patents-in-suit describes how a cell phone user can manage personal information through a mobile phone.

The difficulty in evaluating the sufficiency of either of these matters as a basis for possible disqualification, however, is that Openwave has done little to establish that the inventions involved in the successive representations are so interconnected that "confidential information material to the current dispute would normally have been imparted" to Fish in the course of its patent prosecution work. Conversely, by focusing on an untenable standard that the patents involved be "identical or essentially the same," Fish's opposition sheds little light on whether these matters might ultimately have nothing of substance in common, beyond relating to the same *general* field of technology.

It is reasonable to infer that the technology for enabling internet use via mobile phone has been rapidly evolving over the years and that it has presented any number of technical problems to be solved, with each new stage in mobile phone evolution or enhancements in internet capabilities bringing new challenges and opportunities for connecting between the two. Against that backdrop, it seems entirely possible that even assuming Fish attorneys became intimately acquainted with

5

Openwave's confidential information regarding some particular aspect of internet-mobile phone-connectivity technology, such information might be wholly immaterial to the issues in this action. See *Microsoft Corp. v. Commonwealth Scientific & Indust. Research Org.*, 2007 WL 4376104 (E.D.Tex. 2007) (in action for infringement of patent allegedly covering the industry standard for wireless LAN, assertion that a law firm previously prosecuted nine patents that "involved wireless LAN technologies" insufficient to support disqualification.).

That said, Openwave appears to have made at least some showing that these particular patent prosecutions and the issues in the current dispute have a relationship going beyond simply occupying the same general technological field. A reasonable assumption is that Fish attorneys working on these matters became fully versed in Openwave's then–existing technologies and strategies for "voicemail agents" and "PIM sync," including information that was never subsequently disclosed in any patent applications. The critical question, then, is whether it is reasonable to assume that such information could be *material* to this action. As in *Microsoft*, the fact that the burden is on the party seeking disqualification is dispositive. Openwave has simply failed to show as a factual matter that the technological subject matter of the prior representation supports a reasonable inference that confidential information material to this action would normally have been imparted to Fish during that representation. Accordingly, the patent prosecution work Fish did for Openwave does not serve as a basis for disqualification here.

B. Patent Opposition Work

Beginning in 2000, Fish attorneys represented Openwave in opposing two Australian patent applications, one filed by Motorola, and one by Infogear. At to the Motorola application, at least, there is little question that the patent Motorola was seeking is highly relevant to this case. Its U.S. counterpart, sharing the same specification, issued as U.S. Patent 6,049,821 and formed the basis for an obviousness rejection of some claims of one of the patents-in-suit during prosecution. It appears likely that 724 will rely on the Motorola '821 patent to support an invalidity argument in this action. Thus, putting aside Fish's untenable argument that the two matters would have to be "identical or essentially the same," there would appear to be a significant relationship between the Motorola, and

6

perhaps Infogear, matters and this case. Whether there is a "substantial relationship" for purposes of disqualification analysis, however, is a different and more difficult question.

As Fish suggests, the task at hand is to construct the set of information that its lawyers reasonably could have been presumed to have obtained to carry out the assignment, and then to determine whether anything within that construct constitutes confidential information material to the present litigation. Fish argues that because its assignment in these matters was to *oppose* issuance of the patents, there is no reason to presume it did anything beyond marshalling (with the help of Australian counsel) arguments and prior art to be used against the applications. At least in the abstract, Fish's argument has considerable appeal. Unlike patent prosecution work, and unlike the majority of legal tasks attorneys undertake for clients, opposing a patent application does not *require* the attorney to know *anything* about the client. Indeed, apart from any ethical considerations or fee agreement issues, there would be no reason a client could not hire a law firm to oppose a patent application through an anonymous phone call.

The relevant construct, however, is not what information the Fish lawyers minimally would have needed to carry out their assignment *in theory*, but what information would normally have been imparted to them under the facts of the *actual* lawyer-client relationship shown by the record. In that regard, Openwave has submitted declarations from its chief technology officer and from its in-house patent counsel at the time describing relatively extensive discussions they had with Fish attorneys regarding the technology at issue and Openwave's interests in opposing the Motorola application. Fish billing records also substantiate that there was more communication between attorneys and client than a simple instruction from Openwave to oppose the patent application and a report back from Fish of the public information it had gathered in doing so.

Fish argues Openwave's showing is nevertheless insufficient for several reasons. First, Fish contends that even to the extent Openwave stated its reasons for wanting to oppose the Motorola application, such information is not material here, and is obvious in any event. While that may well be, it is not dispositive, because there is no indication that the information disclosed to Fish was limited to the reasons Openwave was concerned about the Motorola application. Next, Fish faults the declarations for couching the factual assertions in terms of what "likely" was discussed. The

7

conditional language precludes a conclusion that Openwave has shown *actual* transmission of material confidences, but again, the substantial relationship test does not require such a showing. Because the test focuses on what "normally" would have been imparted given the nature of the representation, the declaratory evidence as to what "likely" was said is highly probative on the question.

Finally, Fish contends, in essence, that the evidence is simply too vague to permit an inference that its lawyers obtained material confidences. To be sure, discussions between the lawyers and the client regarding the "technology" could involve no confidences at all, particularly if the focus was on *Motorola's* technology rather than that of Openwave. In essence, however, Fish is asking the Court to engage in the very type of speculation and line-drawing the substantial relationship test is designed to avoid. See *Global Van Lines, Inc. v. Superior Court* 144 Cal.App.3d 483, 489 (1983) (presumption of the substantial relationship test is necessary to avoid an attorney engaging "in a subtle evaluation of the extent to which he acquired relevant information in the first representation and of the actual use of that knowledge and information in the subsequent representation."). To posit overly restrictive limitations on what it is reasonable to assume is communicated between lawyers and their clients does not give adequate recognition to the fact that clients should not be expected to limit themselves to giving their attorneys only the information most relevant or critical to a particular engagement. Indeed, because clients often will not know what is or is not strictly relevant, it is likely that they frequently provide attorneys with far more than the bare minimum the attorneys need to carry out the assignment.[5]

Fish lays great emphasis on cases that have characterized information as "material" for purposes of disqualification only if it is "directly at issue in, or ha[s] some critical importance to, the second representation." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal.App.4th 671, 680 (2004); *Fremont Indem. Co. v. Fremont General Corp*.,143 Cal.App.4th 50; 69 (2006). To the extent that Fish suggests generalized information it may have gleaned regarding Openwave's approach to

---

[5] Undoubtedly there are some clients for whom the reverse is true, and who make it very difficult for counsel to gather all the needed information. The point remains, though, that it is not realistic to assume that lawyers and their clients never discuss more than what is technically necessary.

8

patent issues, interests in opposing the Motorola application, and the like, would not support disqualification, it likely is correct. The construct, however, is that given the record as to the nature of the prior representation, it is reasonable to assume that Openwave would have normally imparted confidential information to Fish that will be *directly* at issue in this action, given the role the Motorola patent played in the prosecution history of a patent-in-suit and the role it is expected to play in the battle over validity.

Finally, after the hearing, a California appellate court issued *Kirk v. First American Title Insurance Company*, No. B218956, 2010 WL 1346403 (Cal. App. 2 Dist. Apr. 17, 2010), and the parties have provided supplemental briefing regarding that case. Fish urges that the central teaching of *Kirk* is that the disqualification rules are to be applied with "common sense," and that where there is no "genuine likelihood" of a former client's confidences being used against it, disqualification is not required. *Kirk* arguably broke new ground among California courts for unambiguously approving for the first time the notion that an "ethical wall" *may* be sufficient to prevent imputed disqualification of a firm when it hires an attorney "tainted" by prior representation of a party adverse to a firm client. This Court would have to break far more new ground, however, to disregard its conclusion that there is a substantial relationship between the Motorola opposition and this action, and not disqualify Fish under the facts here.[6]

As Openwave points out, this is not a situation where Fish hired, but immediately walled-off, a "tainted" attorney—the conflict already existed within Fish when it accepted the engagement. Nor was the ethical wall erected at all until after Openwave complained. Additionally, although it

---

[6] Openwave argues *Kirk* is of little import because it is a non-final decision of an appellate court that may or may not portend what the California Supreme Court will declare the law of California to be. Although federal courts in this state look to the California rules and decisions in deciding disqualification motions, it is not the same situation as when a federal court is asked to apply state law in a diversity case. As the California courts long ago recognized, "[t]he federal courts are governed entirely by federal enactment and their own rules as to admission and professional conduct." *Ex parte McCue*, 211 Cal. 57, 66 (1930). While the Court has elected to hold the members of its bar and *pro hac vice* admittees to California State Bar standards, *see* Civil Local Rule 11-4(a)(1), it is ultimately up to this Court (and the courts above it), not the California Supreme Court, to determine what warrants disqualification from representation in this forum. Nevertheless, while the Court would be free to follow *Kirk* notwithstanding its non-final and appellate status, Openwave's further argument that it is distinguishable is well-taken.

9

appears that the attorneys who would be shouldering the primary load during this litigation are geographically isolated from the Fish attorneys who represented Openwave, Fish's local counsel of record is not, and the local office is relatively small. See *Kirk*, 2010 WL 1346403 at *19, citing *Hitachi, Ltd. v. Tatung Co.*, *supra*, 419 F.Supp.2d at p. 1165 ("Close proximity of attorneys 'increases the actual risk of intentional or unintentional disclosure of [client] confidential information.' In a small practice group, separating the tainted attorney from the case alone might not be sufficient . . . .").

Fish has not explained whether its conflict check system failed to detect this issue when it was first asked to become involved in this litigation, or whether it was aware of its prior representation of Openwave but did not believe it to present a conflict. In either event, Fish's position that there is no disqualifying conflict was not unreasonable, and there are no grounds to conclude that to date any Openwave confidential information has actually been disclosed to the Fish attorneys working on this matter or to defendants. Nevertheless, on the record here Openwave has carried its burden to demonstrate that the balance between the present clients' right to counsel of their choosing, and the former client's right to be certain that its confidences will be maintained and not used against it, even inadvertently, falls on the side of requiring Fish to withdraw from this action.

## IV. CONCLUSION

The motion to disqualify is granted. The hearing dates on any pending discovery motions are vacated. New counsel will be expected to cooperate in having such motions rescheduled for the earliest practicable dates before the referral magistrate judge. The deadlines set out in the Case Management Scheduling Order entered on March 11, 2010 shall remain in place for now, but defendants will be expected to accommodate any reasonable request from new counsel for a stipulation to extend any or all of those deadlines.

IT IS SO ORDERED.

Dated: 04/22/2010

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE