¶QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Claude M. Stern (Bar No. 96737)
  Evette D. Pennypacker (Bar No. 203515)
  Matthew R. Hulse (Bar No. 209490)
  Cheryl A. Galvin (Bar No. 252262)
  Thai Le  (Bar No. 267460)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California  94065
Telephone:      (650) 801-5000
Facsimile:       (650) 801-5100
Email: claudestern@quinnemanuel.com
        evettepennypacker@quinnemanuel.com
        matthulse@quinnemanuel.com
        cherylgalvin@quinnemanuel.com
        thaile@quinnemanuel.com

*Attorneys for Defendants and Counterclaimants*
724 Solutions (US), Inc. and
724 Solutions Software Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPENWAVE SYSTEMS, INC., a Delaware corporation, and OPENWAVE SYSTEMS (ROI) LTD., its Republic of Ireland subsidiary, <br><br> *Plaintiffs*, <br><br> v. <br><br> 724 SOLUTIONS (US) INC., a Delaware corporation, and 724 SOLUTIONS SOFTWARE INC., a Delaware corporation, <br><br> *Defendants*. <br><br> AND RELATED COUNTERCLAIMS | Case No. 09-CV-03511 (RS, HRL) <br><br> **DEFENDANTS 724 SOLUTIONS (US) INC. AND 724 SOLUTIONS SOFTWARE, INC.'S OPPOSITION TO OPENWAVE SYSTEMS, INC.'S MOTION TO COMPEL (1) MOBIXELL NETWORKS, INC. TO COMPLY WITH SUBPOENA; AND (2) 724 SOLUTIONS TO PRODUCE DOCUMENTS AND INFORMATION IN RESPONSE TO OPENWAVE'S WRITTEN DISCOVERY** <br><br> Date:      October 5, 2010 <br> Time:     10:00 a.m. <br> Judge:    Hon. Howard R. Lloyd |

I.    **INTRODUCTION**

Openwave Systems, Inc. and Openwave Systems (ROI) Ltd.'s (collectively, "Openwave") has again prematurely sought this Court's relief concerning issues that (a) the parties have not discussed, (b) the parties were in the process of discussing, or (c) are completely moot.  724 Solutions (US) Inc. and 724 Solutions Software Inc. (collectively, "724 Solutions") has already produced, agrees to produce or has properly withheld each category of documents and information described in Openwave's motion, and Openwave's motion should be denied.

II.    **BACKGROUND**

**Openwave's Lawsuit.**  Openwave filed this lawsuit on July 31, 2009 alleging 724 Solutions infringes four patents in the Wireless Application Protocol ("WAP") area.  (Dkt. No. 1.)  By agreement of the parties, Openwave added four more patents to the case in early 2010.  (Dkt. Nos. 51, 76, 78.)

**724 Solutions' Joint Defense Agreement With Mobixell.**  In or around August, 2009, 724 Solutions and third party Mobixell Networks, Inc. ("Mobixell") began to negotiate the possibility of Mobixell acquiring 724 Solutions.  (Sims Decl. ¶ 4; Aharoni Decl.¶ 2.)  By October 2009, the Mobixell and 724 Solutions were in serious negotiations and expected to complete the acquisition in a very short amount of time.  (Sims Decl. ¶ 6; Aharoni Decl. ¶ 4.)  Mobixell completed its acquisition of 724 Solutions on January 15, 2010.

Because Mobixell would be acquiring the very technology at issue in this lawsuit, Mobixell began discussing the asserted patents with 724 Solutions in October 2009.  (Aharoni Decl. ¶ 4.)  Prior to engaging in these discussions, John Sims (on behalf of 724 Solutions) and Amir Aharoni (on behalf of Mobixell) discussed, after consultation with counsel, having a joint defense agreement so that 724 Solutions could share its analyses of the patents and its litigation strategies with Mobixell.  (Sims Decl. ¶ 6; Aharoni Decl.¶ 4.)  Prior to the acquisition of 724 Solutions by Mobixell, the two companies had partnered to create joint product installations for common customers, where the technology 724 Solutions brought to the partnership was the same technology Openwave now accuses of infringement.  (Aharoni Decl., ¶ 3; Sims Decl., ¶ 5.)  This

1   contributed to the result that when 724 Solutions and Mobixell began negotiations relating to a

2   possible acquisition by Mobixell in August of 2009, Mobixell and 724 Solutions understood and

3   believed they had the same legal interests with respect to Openwave's lawsuit against 724

4   Solutions because Mobixell would need to defend the lawsuit once the acquisition was complete.

5   (Sims Decl. ¶ 6; Aharoni Decl. ¶ 4.)  Mobixell and 724 Solutions therefore agreed that their

6   communications regarding the Openwave lawsuit were engaged in pursuant to a joint defense

7   privilege.  (Sims Decl. ¶ 6; Aharoni Decl. ¶ 4.)

8          During the negotiations regarding the acquisition, Tamar Ben-Porath, Mobixell's

9   Executive Vice President, was frequently involved in numerous different aspects of the

10  discussions.  (Ben-Porath Decl., ¶ 4.)  Although she did act in her business capacity for some

11  issues, whenever the parties were discussing Openwave, the patents-in-suit, or the ongoing

12  litigation, she was acting in her role as legal advisor and in-house counsel for Mobixell.  Mobixell

13  also often copied Yonar Lipschitz, an investment banker from Ridgecrest Capital, on its

14  communications.  Mr. Lipschitz was working for Mobixell in order to advise Mobixell about the

15  acquisition and its analysis of the litigation.  (Aharoni Decl. ¶ 6.)  Mobixell expected its

16  communications with Mr. Lipshitz about the litigation to be privileged and confidential.  (Aharoni

17  Decl. ¶ 6.)  In its communications with Mobixell, 724 Solutions would sometimes include Austin

18  Ventures, which was at the time one of only two shareholders of 724 Solutions, along with Mr.

19  Sims.  (Sims Decl. ¶ 4.)  Together, all of these individuals communicated and worked together in

20  order to further the common legal interest of defending the Openwave lawsuit. (Sims Decl. ¶ 6;

21  Aharoni Decl. ¶ 4.)

22         **Openwave's Motion to Disqualify 724 Solutions' Counsel.**  Once the acquisition was

23  complete, Fish & Richardson LLP substituted in as counsel of record in this matter for 724

24  Solutions.  (Dkt. Nos. 67, 68.)  Shortly thereafter, Openwave filed a motion to disqualify Fish &

25  Richardson.  (Dkt. No. 89.)  Judge Seeborg granted that motion by order dated April 22, 2010.

26  (Dkt. No. 167.)  From April 22, 2010 through May 21, 2010, 724 Solutions was actively seeking

27  new counsel to represent it in this matter and was unrepresented.  (Pennypacker Decl., ¶ 2.)

28

1     **Openwave's First Motion to Compel Mobixell Acquisition Communications.**  On

2  March 16, 2010, Openwave filed a Motion seeking an order compelling Mobixell and 724

3  Solutions to produce documents relating to Mobixell's acquisition of 724 Solutions, or, in the

4  alternative, to produce a privilege log explaining the privilege grounds on which such documents

5  had been withheld.  (Dkt. 129.)   The parties fully briefed the motion, but it was not heard as a

6  result of Openwave's motion to disqualify.

7     **Subsequent Meet and Confer on Openwave's Motion to Compel Mobixell Acquisition**

8  **Communications.**  Quinn Emanuel substituted as counsel of record for 724 Solutions on May 21,

9  2010.  (Dkt. 181.)  On May 28, 2010, the parties met and conferred on all pending motions,

10  including the one at issue here.  (Pennypacker Decl., ¶ 3.)   In that call, new counsel agreed to

11  provide Openwave with a privilege log.  (*Id.*)  The parties had additional discussions and

12  correspondence regarding the scope and content of that privilege log, and 724 Solutions produced

13  it to Openwave on July 17, 2010.  (*Id.*)  Openwave requested a list of attorneys referenced in the

14  privilege log, which list 724 Solutions provided on July 22, 2010.  (Pennypacker Decl., ¶ 3.)

15     On July 19, 2010, Openwave requested that the parties exchange supplemental briefs

16  regarding Openwave's motion to compel.  (Pennypacker Decl., ¶ 4.)  Openwave did not comment

17  on the substance or content of the privilege log or other information 724 Solutions provided with

18  that request.  (*Id.*)  724 Solutions sought to meet and confer with Openwave regarding the

19  privilege log, but Openwave refused to participate in any meaningful dialogue about the issue,

20  instead insisting that its original motion be put back on calendar.  (*Id.*)  Openwave then re-noticed

21  its earlier-filed motion to compel and sought file a "supplemental" brief outlining new issues

22  about the privilege log.  The Court denied Openwave's request to file supplemental materials, took

23  Openwave's motion to compel off calendar, and ordered the parties to meet and confer in person.

24  (Dkt. 218.)

25     **Openwave's First Motion to Compel Interrogatory Responses and Documents.**  On

26  February 3, 2010, Openwave filed a motion to compel supplemental and revised responses to

27  numerous interrogatories and requests for production.  (Dkt. 74).  The motion was originally

28  noticed for March 16, 2010.  (*Id.*)  This Court found, however, that there had not been "sufficient

1   meet-and-confer efforts . . . to satisfy the requirements of Local Rule 37-1." (Dkt. 87 at 1.) The

2   hearing was continued until April 6, 2010 at 10:00 a.m. (Dkt. 121.) Because of the pending

3   disqualification motion of 724 Solutions' then-counsel, the motion was further continued until

4   April 27, 2010. (Dkt.165.) On April 22, 2010, Judge Seeborg granted an order disqualifying 724

5   Solutions' prior counsel. (Dkt. 167.) In that order, Judge Seeborg vacated all hearing dates on

6   discovery motions, mandating that counsel "cooperate in having such motions rescheduled for the

7   earliest practicable date" before the magistrate judge. (Id. at 11.)

8        Once 724 Solutions' current counsel substituted into the case, it participated in an

9   extensive meet and confer with Openwave's counsel in an effort to resolve many of the

10  outstanding issues. (Pennypacker Decl. ¶ 3.) During that meet and confer, 724 Solutions agreed

11  to, and subsequently did, supplement its responses to interrogatory numbers 3-7 and 9-12. (Id. at ¶

12  11) Openwave stated that it would review 724 Solutions' document production to date and

13  provide 724 Solutions with a list of documents that it believed to be missing. (Id. at ¶ 10.) To

14  date, 724 Solutions has not received such a list. (Id.)

15  **Openwave's Attempted Re-newed Motion to Compel Interrogatory Responses and**

16  **Documents.** Openwave attempted to re-notice its motion to compel on August 3, 2010, and also

17  filed an administrative motion for permission to file a supplemental brief supporting its motion to

18  compel. On August 4, 2010, this Court took Openwave's motion to compel off calendar and

19  ordered the parties to meet and confer in person. (Dkt. 218.)

20  **Document Discovery To Date**. To date, 724 Solutions has produced over 2 million pages

21  of documents. (Declaration of Evette D. Pennypacker, "Pennypacker Decl.", ¶ 5.) It is still in the

22  process of rolling document productions. (Id.) Openwave, however, has produced just over 1

23  million pages of documents. (Id.) Only 14,311 pages were produced prior to July 30, 2010, when

24  724 Solutions filed a motion to compel. (Id. ) Much of Openwave's document production

25  consists of irrelevant documents, including documents relating to employees' travel arrangements

26  and an employee's applications to MBA programs. (Id.)

27  **"Damages Agreement."** On January 14, 2010, Openwave and 724 Solutions' prior

28  counsel entered into a phasing agreement, whereby certain discovery would be stayed until after

the *Markman* order in the case.  (Pennypacker Decl., ¶ 7.)  This agreement was not entered as a stipulation; instead, it was an oral agreement that was memorialized in writing by the parties.  (*Id*.)  Specifically, the parties agreed "to postpone, until after the *Markman* order, all damages discovery, with the exception of discovery directed to the top line sales and revenue numbers for the accused products.  All other discovery—including technical discovery regarding technical aspects and operation of the accused products, may be conducted prior to the *Markman* order."  (*Id*.)  Since entering into the "Damages Agreement," Openwave has refused to provide information about multiple topics under the guise of complying with the agreement, while still insisting that 724 Solutions provide full discovery.  724 Solutions has attempted on numerous occasions to revisit the Damages Agreement with Openwave, due to the discovery roadblocks that it has been creating.  (*Id*.)  Openwave has consistently refused to revisit this agreement with 724 Solutions' new counsel.

**Court Ordered Meet and Confer Regarding Discovery**.  The parties participated in an in-person meet and confer on August 18, 2010.  (Pennypacker Decl., ¶ 8.)  During that meet and confer, Openwave told 724 Solutions that the only way to resolve its motion to compel the Mobixell-acquisition related documents was by 724 Solutions producing all the documents on its privilege log.  (*Id*.)  Openwave was not interested in discussing any individual entries on the privilege log.  (*Id*.)

Regarding foreign sales information, 724 Solutions stated that it would likely further supplement its interrogatory responses to provide responsive information regarding all deployments, including overseas deployments, of accused products and would also likely produce documents regarding those deployments, to the extent such documents had not already been produced, but 724 Solutions had to confirm this provision of further information with client contacts.  (*Id*. at ¶ 8.)

During this meeting, 724 Solutions also again attempted to meet and confer with Openwave regarding the Damages Agreement.  (*Id*. at 8.)  Openwave stated that it was unwilling to consider lifting the damages agreement.  (*Id*.)  Prior to this meeting, 724 Solutions had attempted on numerous occasions to discuss the possibility of lifting the damages agreement and

1  instead agreeing to provide all discovery at this time, due to the numerous difficulties the damages

2  agreement was causing.  (*Id*.)  When discussing the deficiencies of Openwave's interrogatory

3  responses due to its reliance on the damages agreement on July 29, 724 Solutions again proposed

4  lifting the agreement.  However, Openwave reiterated on August 2 that it was not interested in

5  revisiting the agreement and would not supplement its interrogatory response.  (*Id*.)  Openwave

6  maintained this position during the parties' in-person meet and confer on August 18, 2010.

7  **Openwave's Ultimatum.**  With no further discussion of these issues, Openwave

8  demanded, on August 30, that 724 Solutions give Openwave its final position on the privilege log

9  and the overseas deployments by 5:00 p.m that day.  (Pennypacker Decl., ¶ 9.)  The email was sent

10  at 2:53 p.m., giving 724 Solutions only 2 hours and 7 minutes to respond (in the best case scenario

11  that the email was immediately received).  (*Id*.)  Many decision-makers at 724 Solutions live in

12  Israel, which is ten hours ahead of Pacific Daylight Time.  (*Id*.)  724 Solutions' counsel responded

13  that it could not give Openwave a "final position" within the unreasonable ultimatum period.  (*Id*.)

14  Openwave filed this motion the next day.  (Dkt. 224.)

15  III.  **ARGUMENT**

16  A.  **Openwave's Motion Is Premature And Many Of The Issues Are Moot.**

17  Openwave did not allow for sufficient discussion between the parties regarding many of

18  the issues that it raises in its motion.  Instead, it has prematurely filed this motion about issues that

19  could have been resolved easily without the Court's intervention, as well as issues that have

20  already been resolved.  Openwave's counsel informed 724 Solutions' counsel that Openwave

21  would review 724 Solutions' document production and then send a list of any documents or

22  categories that Openwave believed were missing.  (Pennypacker Decl., ¶ 10.)  That never

23  occurred, and even in its motion to compel, Openwave fails to describe any documents that are

24  missing.  While 724 Solutions initially objected to providing information regarding overseas

25  deployments of the accused products, documents relating to that information were not withheld

26  from 724 Solutions' document production.  Openwave's bare complaints about 724 Solutions'

27  written objections, without regard to 724 Solutions' *actual document production*, ignore the fact

28  that 724 Solutions has already produced documents relating to the majority of the requests for

which Openwave is moving to compel.  Indeed, Openwave's own motion papers make clear that such documents have been produced, since it attaches an example of such a document to its papers.  (Declaration of Brett M. Schuman in support of Motion to Compel, Exhibit J.)

1.   **724 Solutions' Responses to Interrogatory Nos. 3-7**

724 Solutions told Openwave during the parties' in-person meet and confer that 724 Solutions would likely supplement its responses to interrogatory numbers 3-7 to include overseas deployment information.  (Pennypacker Decl., ¶ 11.)  Had Openwave allowed 724 Solutions an appropriate opportunity to state its position prior to filing this motion, it would have learned that 724 Solutions *will* supplement its responses to interrogatory number 3-7 to include information regarding overseas deployments and provide written verification(s).

2.   **724 Solutions' Responses to Requests for Production Nos. 1,3, 4, 6, 7,9, 10, 12, 13,15, 16, 18, 19,21, 22, 24, 25, 27, 28 and 30.**

Openwave's own opening papers make clear that is motion is utterly groundless with regards to Request Nos. 1,3, 4, 6, 7,9, 10, 12, 13,15, 16, 18, 19,21, 22, 24, 25, 27, 28 and 30, which seek documents relating to 724 Solutions' foreign deployments.  Openwave states in its motion that "724 Solutions has produced <u>thousands</u> of documents regarding accused products deployed overseas in response to document requests propounded by Openwave."  (Plaintiff's Motion to Compel at 13) (emphasis in original.)  Exhibit J to the Declaration of Brett M. Schuman in Support of Plaintiff's Motion to Compel is another clear example of Openwave's admission that it has already received documents responsive to these requests from 724 Solutions.   If Openwave had adequately conferred with 724 Solutions before filing this ill-conceived motion, this entire aspect of Openwave's motion could have been avoided.  Openwave's motion regarding these requests should be denied.

3.   **724 Solutions' Responses to Requests for Production Nos. 2, 8, 14, 20, 26**

Openwave's motion regarding request numbers 2, 8, 14, 20 and 26 is another blatant example of how Openwave is wasting this Court's and 724 Solutions' time and resources.  These requests seek source code for all deployed accused products from 2003 to the present.  724 Solutions has already made source code for all deployed accused products available to Openwave.

(Pennypacker Decl., ¶ 12.)  Indeed, 724 Solutions has accommodated Openwave's expert in his review of all of the source code files related to the accused products on six separate days.  (*Id*.) There is no additional source code to provide for overseas deployments of the accused products. (*Id*.)  Again, if Openwave had simply conferred with 724 Solutions before filing this motion, it would have quickly learned that there was nothing to compel.  Openwave's motion regarding these requests should be denied.

### 4. 724 Solutions Has Agreed to Produce Documents Responsive to Request Numbers 37, 39, 40, 42, 43, and 63

Although 724 Solutions has preserved several objections relating to document request numbers 37, 39-40, 42-43 and 63, including its objection to premature damages discovery, it has not withheld non-privileged documents responsive to these requests.  If Openwave, after reviewing 724 Solutions' document production, identifies documents responsive to these requests that have not been produced, 724 Solutions will meet and confer with Openwave and attempt to locate and produce relevant, responsive, non-privileged documents.  Openwave has not identified a single document it believes is missing from 724 Solutions' production, and did not discuss this with 724 Solutions before filing this motion.  Again, Openwave's motion is premature, moot, and a waste of time.

### 5. Openwave Should Specifically Identify Any Issues It Has Regarding 724 Solutions' Written Document Objections and Responses

Openwave's assertion that 724 Solutions' responses to various requests for production contain "lawyer gobbledygook" is bizarre.  724 Solutions has attempted to clearly articulate its positions in relation to all document requests.  However, if Openwave has any questions regarding what 724 Solutions is or is not willing to produce, 724 Solutions would obviously answer those questions.  Unfortunately, Openwave has not identified for 724 Solutions any responses that Openwave finds confusing.  Instead, Openwave simply filed this ambiguous and unnecessary motion to compel responses that it understands.  Using the Court as a vehicle to ask for clarifications is a prime example of Openwave's premature rush to file motions, its unwillingness to directly communicate with 724 Solutions, unnecessarily wasting the Court's and the parties' time and resources.

B.    **724 Solutions Will Not Produce Documents Related Solely To Damages, Per The Parties' "Damages Agreement."**

There are a small number of requests for which 724 Solutions has not agreed to provide documents at this time.  724 Solutions will provide documents related to these specified requests after the *Markman* order, per the parties' damages phasing agreement.  Although prior counsel did provide Openwave some damages related discovery despite this purported agreement, Openwave has steadfastly refused to provide 724 Solutions with *any* discovery that could any way be considered related to damages.  For example, Openwave has declined to respond to 724 Solutions' interrogatory numbers 4, 12 and 15 (which relate to licensing, lost sales and marking), and has refused to produce documents in response to document request numbers 63, 89, 91-93, 96-100, 102-104, 115-117, and 120 (which relate to licensing and royalties, product demand, competition in the industry, market share, supply capacity, competition with 724 Solutions, costs and profits associated with marketing and manufacturing of accused products, and customers ).  (*Id*. at ¶ 14.)

By way of example, Request No. 63 asks for

> All Documents and things Concerning any policies, procedures and/or practices of Openwave, whether formal or informal, written or otherwise, for licensing or valuing intellectual property, technology or know-how.

(*Id*.)  Openwave objected to the request "to the extent it purports to seek damages discovery which the parties have agreed to defer until after the *Markman* ruling," and refused to produce documents responsive thereto.  (*Id*.)  However, this information is clearly related at least to 724 Solutions' defense that the asserted patents are unenforceable as a result of Openwave's failure to disclose the patents to the appropriate standard setting organization (of which it is a founding member) and is not solely a damages-related issue.

Because of Openwave's extremely broad interpretation of the Damages Agreement, 724 Solutions began responding similarly, to ensure that the agreement is bilateral.  (Pennypacker Decl., ¶ 15.)  Despite the obvious hypocrisy in its position, Openwave has moved to compel *the same information that Openwave is refusing to provide*.  For example, Openwave is moving to compel documents responsive to request number 56, which seeks

> All documents and things relating to each patent
> license obtained by 724 Solutions which covers in
> whole or in part any technology contained in XMG,
> SAS, XAP, AGW, XSAM or XMA, including
> without limitation licensing agreements and addenda,
> and royalty reports.

Pennypacker Decl., ¶ 15.)  This request is obviously very similar to the request above, for which Openwave is refusing to produce documents.

724 Solutions has repeatedly told Openwave that it would be willing to lift the "Damages Agreement" to allow both parties to exchange full discovery on all topics at this time. (Pennypacker Decl., ¶ 15.)  Openwave, however, has refused to renegotiate the agreement. Therefore, Openwave may not seek to compel documents that are clearly subject to the agreement, and that Openwave itself is refusing to provide to 724 Solutions.

Openwave's request numbers 48 and 56 seek documents that are solely related to damages, and therefore 724 Solutions is not required to produce these documents until after *Markman*, per the parties' agreement.  Request No. 48 seeks documents relating to anticipated sales, projected sales, amount of sales and sales forecasts.  Request No. 56 seeks licensing information for the accused products, including royalty reports.  724 Solutions will produce non-privileged documents responsive to these requests after the *Markman* order issues.

Openwave's request number 5, 11, 17, 23 and 29 seek documents relating to revenues and profits generated from deployments of the accused products, including licensing revenues. Although Openwave attempts to argue that such information is related to the extent of liability, this information is clearly related to damages, as it seeks *revenues*.  As such, 724 Solutions will provide this information following the issuance of the *Markman* order.

Accordingly, Openwave's motion regarding these requests should be denied.

C.       **The Documents On 724 Solutions' Privilege Log Are Privileged**

Openwave's assertion that 724 Solutions' privilege log listing communications between 724 Solutions and Mobixell regarding Openwave, the litigation or the asserted patents is insufficient is without merit.

724 Solutions logged 188 documents that were created between the period October 2009 and January 15, 2010 and appeared to mention Openwave, the asserted patents or this litigation.[1] (Pennypacker Decl., ¶ 17.)  After 724 Solutions produced the privilege log, Openwave did not specify to 724 Solutions which entries it objected to, nor did it give 724 Solutions an opportunity to amend the privilege log prior to filing its motion to compel.  After reviewing Openwave's motion and considering its objections to specific entries in the privilege log, 724 Solutions has reviewed its privilege log and removed entries that correspond to documents and parts of logged email chains that do not discuss Openwave, the asserted patents or this litigation and that are therefore not responsive to Openwave's document requests.  (*Id.*)  As will be seen below, had Openwave adequately met and conferred with 724 Solutions before filing its motion, many of the specific issues raised in Openwave's motion would never have been brought before the Court.

### 1.   **Privilege Was Not Waived**

Openwave's argument that 724 Solutions waived its privilege arguments because its privilege log was not served until July 17, 2010 is without groundless.  724 Solutions served its responses to Openwave's 3rd Set of RFPs on February 22, 2010.  59 days later, on April 22, 2010, Openwave's motion to disqualify 724 Solutions' prior counsel was granted.  (Dkt. 167.)  724 Solutions' current counsel substituted into the case on May 21, 2010, and worked to produce the privilege log as soon as practicable thereafter.  (Pennypacker Decl., ¶ 3.)  Further, Openwave has not produced a privilege log for a *single document*, even though its first responses to 724 Solutions' requests for production were due on February 5, 2010.  (*Id.*)  It would be surprising to learn that Openwave, although asserting privilege in response to several requests, would concede to waiving that same privilege because it has not yet produced a privilege log.

Further, the Ninth Circuit has "'reject[ed] a *per se* waiver rule that 'deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit,'" opting instead for

---

[1]   Openwave has agreed that documents created after the acquisition of 724 Solutions by Mobixell was officially complete on January 15, 2010, are not at issue.  (Pennypacker Decl. ¶ 3.)  The dispute, then, centers around the documents created during the three month period between August 2009 and January 15, 2010 when the parties were negotiating the eventual acquisition of 724 Solutions by Mobixell.

an evaluation of the reasonableness of a parties' actions given the factual circumstances of the case.  *Moreno v. Autozone, Inc.*, 2008 WL 906510 at *2 (N.D. Cal. Apr. 1, 2008) (quoting *Burlington Northern & Santa Fe Ry. v. United States Dist. Court*, 408 F.2d 1142, 1149 (9th Cir. 2005)).  In *Moreno*, the Court found that the defendant had not suffered irreparable harm from the six month delay in producing the privilege log, and that therefore no waiver should apply.  *Id*. Here, not only did the substitution of counsel provide for a reasonable basis to extend the time for 724 Solutions to serve the privilege log, but Openwave has also not suffered any harm by the timing of the service of the privilege log, since there is no discovery cutoff and no trial date is currently set.

## 2.     The Common Interest Privilege Does Apply

Although Openwave claims that 724 Solutions may not assert the common interest privilege, the law of this district confirms that the common interest and joint defense privilege is properly used to shield from discovery communications in furtherance of common legal interests between companies engaged in negotiation of a merger or acquisition.  *See BriteSmile, Inc. v. Discus Dental, Inc.*, 2004 WL 2271589 (N.D. Cal. Aug. 10, 2004); *Hewlett Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987).  The common interest privilege applies where "the parties have a common legal interest, such as where they . . . anticipate joint litigation." *Hewlett Packard Co.*, 115 F.R.D. at 309 (citation omitted).

As the Court found in *Hewlett Packard*, "[u]nless it serves some significant interest courts should not create procedural doctrine that restricts communication between buyers and sellers." 115 F.R.D. at 311.  In *Hewlett Packard*, the defendant disclosed its patent attorney's opinion letter concerning validity and possible infringement of the plaintiff's patent to a potential purchaser.  *Id*. at 308.  The Court held that it was clear that the defendant and the prospective purchaser "anticipated litigation in which they would have a common interest.  Moreover, their common interest would have been identical issues of law and of fact."  115 F.R.D. at 310.

Similarly, in *BriteSmile*, Discus Dental, the defendant, was considering purchasing technology from Dr. Salim Nathoo.  2004 WL 2271589 at *1.  Therefore, Discus Dental shared documents with Dr. Nathoo that its counsel had prepared during its investigation of whether the

1  technology infringed any patents.  *Id.*  The Court found that in addition to sharing a common

2  business interest, Discus and Dr. Nathoo also shared a common legal interest regarding whether

3  the technology was patentable and whether it infringed any patents.  *Id.* at *2.  Therefore, privilege

4  was not waived.  *Id.*

5          This case is very similar to both *Hewlett Packard* and *BriteSmile*.  Mobixell and 724

6  Solutions discussed and strategized about litigation in which they had a common interest.  Prior to

7  the acquisition of 724 Solutions by Mobixell, the two companies had partnered to create joint

8  product installations for common customers, where the technology 724 Solutions brought to the

9  partnership was the same technology Openwave now accuses of infringement.  (Aharoni Decl., ¶

10  3; Sims Decl., ¶ 5.)  Thus, when 724 Solutions and Mobixell began negotiations relating to a

11  possible acquisition by Mobixell in August of 2009, it is not surprising that Mobixell expected that

12  it would ultimately end up participating in defending Openwave's infringement claims.  (Aharoni

13  Decl., ¶ 4; Sims Decl., ¶ 6.)  Further, by October 2009, the parties had realized that the transaction

14  was likely going to be finalized within a short timeframe.  (Aharoni Decl, ¶ 4; Sims Decl., ¶ 6.)

15  As such, the parties discussed working jointly to defend against the Openwave lawsuit.  (Aharoni

16  Decl., ¶ 4; Sims Decl., ¶ 6.)  The parties were thus working together for a common *legal* interest,

17  not a business interest.  (Aharoni Decl., ¶ 4; Sims Decl., ¶ 2.)  As the Court held in *Hewlett*

18  *Packard*, there should be no waiver in this situation in order to "create an environment in which

19  businesses can share more freely information that is relevant to their transactions."  115 F.R.D. at

20  311.

21          3.     **The Documents On The Privilege Log Are Protected By Either The**
                   **Attorney-Client Privilege Or The Work Product Doctrine**
22

23          As detailed below, Openwave's criticism and suspicion of the documents listed on the

    privilege log are unfounded.

24          Emails between John Sims and Amir Aharoni.[2]  Some entries on the privilege log are

25  documents that are emails between John Sims, 724 Solutions' CEO prior to the acquisition, and

26

27  _____
        [2]   The log entries to which Openwave is objecting appear to fall into categories, which is how

28  they are discussed here.  However, if the Court would like additional information regarding
    specific entries in the log, 724 Solutions will promptly provide such information.

1    Amir Aharoni, Mobixell's CEO. As indicated on the log, these emails incorporate the advice or

2    direction of counsel relating to the Openwave dispute. Mr. Sims and Mr. Aharoni have verified

3    that they were acting at the direction of counsel when communicating with one another about

4    these topics. (Sims Decl., ¶ 7; Aharoni Decl., ¶ 5.) The attorney work product privilege

5    "encompasses documents that are not confidential communications and documents prepared at the

6    direction of lawyers by non-lawyers. *Clavo v. Zarrabian*, 2003 WL 24272641 at *2 (C.D. Cal.

7    Sept. 24, 2003). *See also Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 513-14 (S.D. Cal. 2003)

8    (finding that communications between non-attorney employees at the direction of counsel were

9    protected).

10        Emails with Tamar Ben-Porath. As Openwave correctly states, Ms. Ben-Porath is indeed

11   an attorney. (Ben-Porath Decl., ¶ 2.) Although her official title is Executive Vice President, that

12   does not preclude Ms. Ben-Porath from engaging in legal activities. (*Id*. ¶ 4.) In fact, because

13   Mobixell is a small company, Ms. Ben-Porath frequently acted in her capacity as an attorney. (*Id*.)

14   The emails on the privilege log that include Ms. Ben-Porath are included because she was acting

15   in her role as an attorney offering legal advice regarding the litigation. (*Id*.) *See, e.g.*, *Kintera,

16   Inc.*, 219 F.R.D. at 514-15 (finding that "[c]ommunications between corporate counsel and

17   company personnel are privileged so long as the information is relayed for the purpose of

18   obtaining legal advice) (citation omitted) (emphasis in original).

19        Communications with third parties. Although Openwave questions the documents on the

20   privilege log that copy what appear to be "third parties" on communications, those

21   communications are indeed privileged. Emails that are copied to an email address

22   "@austinventures.com" were copied to Austin Ventures. Prior to the acquisition by Mobixell,

23   Austin Ventures was one of two shareholders of 724 Solutions, along with John Sims. (Sims

24   Decl., ¶ 4.) The attorney-client privilege applies to such shareholders. *See*, *e.g.*, *City of Rialto v.

25   U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1201 (C.D. Cal. 2007) (finding that, even on

26   dissolution of a corporation, the attorney-client privilege transferred to the sole shareholder at the

27   time of the dissolution). Communications that include Austin Ventures, then, are privileged.

28

1    Ridgecrest Capital, another third party that was copied on some communications, is an

2    investment banking firm that Mobixell hired to assist with its acquisition of 724 Solutions.

3    (Aharoni Decl. ¶ 6.)  Third parties such as independent contractors who serve as advisors and

4    agents for a corporation are covered by the privilege.  *See*, *e.g.*, *Memry Corp. v. Kentucky Oil*

5    *Technology, N.V.*, 2007 WL 39373 at **2-3 (N.D. Cal. Jan. 4, 2007).  Yaron Lipschitz acted as

6    just such an advisor and agent for Mobixell.  (Aharoni Decl., ¶ 6.)  Further, "[m]any courts have

7    recognized that, in today's market place, attorneys need to be able to have confidential

8    communications with investment bankers to render adequate legal advice." *Stafford Trading, Inc.*

9    *v. Lovely*, 2007 WL 611252 at *6 (N.D. Ill. Feb. 22, 2007); *Calvin Klein Trademark Trust v.*

10    *Wachner*, 124 F. Supp. 2d 207, 209 (S.D.N.Y. 2000).  Mobixell considered communications that

11    include Ridgescrest Capital to be privileged and confidential and they should be treated as such.

12    (Aharoni Decl. ¶ 6.)

13    <u>Documents created within Mobixell.</u>  The documents on the privilege log that were created

14    by Mobixell attorneys or that incorporate the advice of counsel and were not shared with 724

15    Solutions were prepared in anticipation of litigation.  (Aharoni Decl.¶ 7.)  It is disingenuous for

16    Openwave to argue that, because Mobixell is not a party to this lawsuit, that it has not been

17    threatened with litigation.  Clearly, as the parties were working together for a common interest, as

18    described above, Mobixell was threatened with the Openwave litigation.  (Aharoni Decl., ¶ 4.)  As

19    such, these documents are legitimately withheld under the attorney work product doctrine.  *See*,

20    *e.g.*, *Hewlett Packard,* 115 F.R.D. at 310.

21    <u>The information on the privilege log is sufficient.</u>  Although Openwave argues otherwise,

22    724 Solutions and Mobixell have provided the information required to be contained in the

23    privilege log.  In *In re Grand Jury Investigation*, the Court found that a privilege log containing

24    the following information was sufficient:  "(a) the attorney and client involved, (b) the nature of

25    the document, (c) all persons or entities shown on the document to have received or sent the

26    document, (d) all persons or entities known to have been furnished the document or informed of

27    its substance, and (e) the date the document was generated, prepared, or dated."  974 F.2d 1068,

28

1    1071 (9th Cir. 1992).  The privilege log produced by 724 Solutions and Mobixell contains that

2    information about each entry.

3    IV.      **CONCLUSION**

4        For the reasons stated above, 724 Solutions respectfully requests that the Court deny

5    Openwave's Motion to Compel.

6

7

8    DATED:  September 14, 2010        QUINN EMANUEL URQUHART & SULLIVAN, LLP

9

10                  By _/s/ Evette D. Pennypacker_____

11                       Evette D. Pennypacker

                        *Attorneys for Defendants and Counterclaimants*

12                      724 Solutions (US) Inc. and 724 Solutions

                     Software Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28